**Maxine S. LYLES, Plaintiff-Appellee,**

v.

**COMMERCIAL CREDIT PLAN CONSUMER DISCOUNT COMPANY d/b/a Commercial Credit Plan, Defendant-Appellant.**

No. 80–3417.

United States Court of Appeals, Fifth Circuit.\* Unit A

Oct. 26, 1981.

Henderson S. Hall, Jr., Margaret A. Hegman, Douglas Levanway, Jackson, Miss., for defendant-appellant.

Thomas, Price, Alston, Jones & Davis, James T. McCafferty, III, Jackson, Miss., for plaintiff-appellee.

\* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Before INGRAHAM, POLITZ and WILLIAMS, Circuit Judges.

POLITZ, Circuit Judge:

Congress addressed the vexatious problem of borrowers obligating themselves without an adequate understanding of interest, charges, and penalties for default by enacting the Truth in Lending Act (TIL), 15 U.S.C. §§ 1601–41. The legislation requires a meaningful disclosure of credit terms, sufficient to enable the average consumer to shop comparatively for credit. Perhaps unavoidably, two provisions of the Act, sections 1640 and 1604, led to often confusing interpretations and results. Section 1640 imposes strict compliance standards on institutional creditors and small lenders alike. Section 1604 delegates to the Federal Reserve Board (FRB) the authority to promulgate regulations which "may contain such classifications, differentiations, or other provisions . . . as in the judgment of the Board are necessary or proper to effectuate the purposes" of the Act and "to prevent circumvention or evasion thereof, or facilitate compliance therewith." This authority to regulate has been used extensively.

Congress specified eight disclosures which must be made in consumer credit arrangements other than open end loans, 15 U.S.C. § 1639; FRB Regulation Z specifies an additional seven. 12 C.F.R. § 226.8(b), (d). The statute requires that all disclosures be clearly worded and conspicuous to the eye, 15 U.S.C. § 1631; Regulation Z states that disclosures must be particularly phrased and be placed in meaningful sequence. 12 C.F.R. § 226.6(a). As a consequence of the detailed specificity, TIL litigation has presented questions such as whether a disclosure, in compliance with both statutory and regulatory criteria, is on the correct sheet of paper, or properly positioned on the document, when presented to the consumer. We today confront such a problem.

Maxine S. Lyles entered into a consumer credit transaction with Commercial Credit Plan in the amount of $2,254.01. She signed two documents, a "Note and Disclosure Statement" and a "Personal Insurance Authorization." The Personal Insurance Authorization lists the cost for credit life insurance. It further recites that the insurance is optional and that the loan is not contingent on the purchasing of insurance. No insurance disclosures appear on the face of the Note and Disclosure Statement.[1] Lyles opted to secure the insurance.

This suit is based on Commercial Credit's failure to disclose the credit life insurance terms on both the Personal Insurance Authorization *and* the Note and Disclosure Statement. Lyles alleges that Commercial Credit violated the TIL statutes and Regulation Z. The case was referred to a magistrate, who recommended that Lyle's motion for summary judgment be granted because "the law of this circuit requires that disclosures under [12 C.F.R.] § 226.4(a)(5) must be made in compliance with the general requirements of § 226.8." The district court adopted the magistrate's findings and recommendations in all material respects. Commercial Credit appeals the award of statutory damages and attorney's fees. We reverse.

### Disclosure Once or Twice?

This case poses, for the first time in this circuit, the issue of the proper interplay between 12 C.F.R. §§ 226.4(a)(5) and 226.8.[2]

---

1. Commercial Credit Plan did not include the cost of credit life insurance in the finance charge which was listed on the Note and Disclosure Statement.

2. 12 C.F.R. § 226.4(a)(5) provides:

    (a) *General rule.* Except as otherwise provided in this section, the amount of the finance charge in connection with any transaction shall be determined as the sum of all charges, payable directly or indirectly by the customer, and imposed directly or indirectly

by the creditor as an incident to or as a condition of the extension of credit, whether paid or payable by the customer, the seller, or any other person on behalf of the customer to the creditor or to a third party, including any of the following types of charges: . . .

    (5) Charges or premiums for credit life, accident, health, or loss of income insurance, written in connection with any credit transaction unless

Section 226.4(a)(5) requires disclosure of premiums for credit life and other insurance, written as part of a credit transaction, in calculating the finance charge. Section 226.8 provides the manner in which the credit term disclosures "required by this section" are to be made. Our task is to determine whether the disclosures required by section 226.4(a)(5) must be in the fashion prescribed by section 226.8.

A perusal of section 226.8(a) indicates that its rules apply only to disclosures required by "this section." In a grammatical sense, the section in which the requirements for credit insurance disclosures, 12 C.F.R. § 226.4(a)(5), and in which the mandates for credit disclosures, other than open end, are found, 12 C.F.R. § 226.8, is the same—section 226. However, a pragmatic reading of section 226.8(a)'s reference to disclosures required by "this section" compels the conclusion that what is obviously intended is "this subsection."

Our conclusion rests on a conjoint examination of sections 226.7 and 226.8. Section 226.7 enumerates several specific disclosures that must accompany the initial transaction on open end credit accounts. Nevertheless, the rules in section 226.7 cannot reasonably be considered as incorporated in section 226.8's disclosure terms, "required by this section." Open end credit and credit other than open end demand different disclosure treatment, as recognized by the FRB. Sep-

arate attention has been accorded the two credit arrangements through the promulgation of independent regulation subsections, within the same section.

The disclosure requirement for credit life insurance is another discrete matter. As might be expected, the FRB has issued a separate regulation for its governance, section 226.4(a)(5). A close study of the regulatory phrasing reflects no reason why the credit life insurance disclosure requirements should be considered as incorporated into section 226.8(a) any more than the open end credit provisions of section 226.7. The Personal Insurance Authorization Lyles signed reflected the cost of the coverage and fairly disclosed that the insurance was optional. Thus, the dictates of section 226.4(a)(5) were satisfied. Since Commercial Credit did not include the cost of the credit life insurance in the finance charge, which was fully stated on the Note and Disclosure Statement, the congressional objective of clear and "meaningful" disclosure of credit terms would not be furthered by reinscribing the insurance terms within the Note and Disclosure recital.[3]

Our opinion is bolstered by interpretations, concerning the interrelationship between sections 226.4(a)(5) and 226.8(a) emanating from the Federal Trade Commission (FTC) and the FRB. In view of the Supreme Court's statement in *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 566,

(i) The insurance coverage is not required by the creditor and this fact is clearly and conspicuously disclosed in writing to the customer; and

(ii) Any customer desiring such insurance coverage gives specific dated and separately signed affirmative written indication of such desire after receiving written disclosure to him of the cost of such insurance.

12 C.F.R. § 226.8 provides:

(a) *General rule.* Any creditor when extending credit other than open end credit shall, in accordance with § 226.6 and to the extent applicable, make the disclosures required by this section with respect to any transaction consummated on or after July 1, 1969. Except as otherwise provided in this section, such disclosures shall be made before the transaction is consummated. At the time disclosures are made, the creditor shall furnish the customer with a duplicate of the instrument or a statement by which the re-

quired disclosures are made and on which the creditor is identified. All of the disclosures shall be made together on either:

(1) The note or other instrument evidencing the obligation on the same side of the page and above the place for the customer's signature; or

(2) One side of a separate statement which identifies the transaction . . . .

3. Our exegesis is necessary for we have not previously addressed the issue whether the credit insurance disclosures must be made in the same document with other credit disclosures. The decisions briefed by the litigants, *Turner v. Firestone Tire & Rubber Co.*, 537 F.2d 1296 (5th Cir. 1976); *Burton v. G.A.C. Fin. Co.*, 525 F.2d 961 (5th Cir. 1976); *Philbeck v. Timmers Chevrolet, Inc.*, 499 F.2d 971 (5th Cir. 1974), do not treat this narrow question.

100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980), that TIL "is best construed by those who gave it substance in promulgating regulations thereunder," the agency pronouncements are entitled to significant weight. The FRB staff opinions and interpretations have been consistent: the provisions of section 226.8(a) apply only to the disclosures therein required and not to those mandated by section 226.4(a)(5).[4] In addition, an FRB staff interpretation letter has indicated that it is permissible for the disclosures required under section 226.4(a)(5) to "be made on a statement separate from the regular Truth-in-Lending disclosure form."[5] A letter authored by the Assistant Director for Credit Practices of the FTC carries a similar message.[6]

Lyles argues that the documents Commercial Credit relies on do not express the official position of the FRB; four of them are unofficial FRB staff interpretations. Lyles insists that neither the FRB papers nor the FTC letter, similar in its content, is entitled to deference under *Milhollin*. We cannot agree. The Supreme Court teaches: "Unless demonstrably irrational Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive . . . ." 444 U.S. at 565, 100 S.Ct. at 797.

Today we seek to enforce Congress' statutory regime and the attendant agency regulations. In this effort, administrative views, official or unofficial, offer helpful guidance. *See, e. g., Ford Motor Credit Co. v. Milhollin*, 444 U.S. at 566 n.9, 100 S.Ct. at 797; *Koerner v. American Express Co.*, 615 F.2d 191 (5th Cir. 1980), *rev'd*, —— U.S. ——, 101 S.Ct. 2281, 68 L.Ed.2d 803 (1981). *Cf. Anderson Bros. Ford v. Valencia*, —— U.S. ——, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981). We are mindful of our responsibility to construe the Act and regulations in a manner favoring the consumer, *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 93 S.Ct. 1652 (1973), but "we must not

blindly follow such a course if in doing so we lose sight of the purpose behind truth in lending legislation." *Downey v. Whaley-Lamb Ford Sales, Inc.*, 607 F.2d 1093 (5th Cir. 1979). In this regard, we heed the statement by the Supreme Court, "Meaningful disclosure does not mean *more* disclosure." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. at 568, 100 S.Ct. at 798 (emphasis in original). The circumstances presented in the instant case raise this admonition to the level of a clarion call. To repeat the disclosures required of a credit life insurance authorization on the Note and Disclosure Statement is not *meaningful* in aiding the consumer to wisely shop to fulfill credit needs. It is only *more* disclosure—a redundancy that is neither preferable nor required.

The judgment of the district court is REVERSED.

---

**4.** FRB letter 264, 5 Cons.Cred.Guide (CCH) ¶ 30,517 (Feb. 20, 1970).

**5.** FRB Official Staff Interpretation No. FC–0037, 42 Fed.Reg. 3827 (1977).

**6.** Letter of Lewis Goldfarb of July 20, 1979. The letter is similar in impact to an informal staff opinion.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.