Michael SHRODER and Susan Shroder, his wife, and Gregory Pillon, Plaintiffs,

v.

SUBURBAN COASTAL CORP., Defendant.

No. 80–2742–Civ–SMA.

United States District Court, S.D. Florida.

Sept. 29, 1982.

---

Gregg Spieler, Spieler & Spieler, Miami, Fla., for plaintiffs.

Davisson F. Dunlap, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Orlando, Fla., for defendant.

## ORDER AND MEMORANDUM OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

ARONOVITZ, District Judge.

THIS CAUSE having come before the Court upon Cross-Motions for Summary Judgment and the Court having considered the Motions and various memoranda of law filed by the parties, the record herein including but not limited to the affidavits and pertinent portions of the depositions, and the oral argument of counsel presented at a hearing, and being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment is hereby GRANTED, and Plaintiffs' Motion for Summary Judgment is hereby DENIED. The Court concludes that there is no genuine issue as to any material fact and that the Defendant is entitled to judgment as a matter of law. Accordingly, Summary Judgment in favor of the Defendant is appropriate. *See* Rule 56(c), Fed.R.Civ.P. Under even date herewith the Court shall enter Final Judgment in favor of the Defendant.

## MEMORANDUM OPINION

This action was brought by three (3) Plaintiffs against Defendant alleging violations by the Defendant of the Truth-In-Lending Act, 15 U.S.C. § 1601, *et seq.,* and Regulation Z, 12 C.F.R. § 226.1, *et seq.* Plaintiffs filed a Motion to Certify Class Action, and said Motion was denied by written Order of this Court on June 18, 1981 (docket entry No. 50). Thereafter the parties filed Cross-Motions for Summary Judgment.

The parties are in agreement that there is no genuine issue as to any material fact. Plaintiffs MICHAEL SHRODER, a physician, and his wife SUSAN SHRODER, purchased real estate in Dade County and executed a note and first mortgage upon said real estate in favor of Defendant SUBURBAN COASTAL. True copies of the note and mortgage are attached to the Amended Complaint (docket entry No. 16) as Exhibit "A". In a separate transaction, Plaintiff GREGORY PILLON, a professional examiner of title to real property, purchased real property in Dade County and executed a note and first mortgage upon said real estate in favor of Defendant SUBURBAN COASTAL. True copies of the note and mortgage reflecting this transaction are attached to the Amended Complaint as Exhibit "C". The respective Plaintiffs purchased the real estate with the intent to reside thereon, and subsequent to the closing of the respective transactions the Plaintiffs did reside on the respective properties they had purchased. Subsequent to the closing of the loans, the Defendant assigned the Plaintiffs' mortgages to third parties. The Defendant is a mortgage broker who closes home loans with its own funds and subsequently sells the loans to investors.

The undisputed facts show that prior to October 15, 1979, the SHRODERS, in anticipation of purchasing a home, contacted the Defendant and inquired about the interest rate it was then charging for home mortgages. (Deposition of Susan Shroder at 3–4). The SHRODERS found that Defendant was charging the lowest rate of the lenders they contacted. (Deposition of Susan Shroder at 4). Accordingly, they arranged to borrow funds through Defendant to purchase their home.

Town & Country Title Guaranty & Escrow, Inc. was selected to conduct the closing. Prior to the closing, the SHRODERS received from the Defendant a "good faith estimate of closing costs." The Defendant sent to Madeline M. McCloskey, an employee of Town & Country, a closing package consisting of closing instructions, an uncompleted Real Estate Settlement Procedure Act statement (hereinafter "RESPA"), an uncompleted Truth-in-Lending disclosure statement (hereinafter "TIL"), and other miscellaneous documents.

Acting as Defendant's agent, Ms. McCloskey completed all of these forms, including the TIL disclosure and the RESPA statement, and reviewed and fully explained them to Mrs. Shroder and her attorney, Gregory Spieler, during the closing. (Deposition of Madeline McCloskey at 14–15). Exhibit "B" attached to the Amended Complaint is a true copy of the TIL disclosure statement supplied to the SHRODERS. Ms. McCloskey also explained to Mrs. Shroder the difference between the interest rate and the annual percentage rate. (Deposition of Madeline McCloskey at 36). At that time, neither Mrs. Shroder nor her attorney, Mr. Spieler, who is representing the Plaintiffs in this action, raised any questions or complaints about the TIL disclosures. Dr. Shroder was not present at the closing. Rather, prior to the closing, Mrs. Shroder met her husband coming out of the operat-

ing room, had him sign the documents and then brought the signed papers to the closing. (Deposition of Susan Shroder at 11). Approximately eight months later, Mr. Spieler brought to the SHRODERS' attention, the alleged violations. (Deposition of Michael Shroder at 10).

Plaintiff PILLON has been employed as a title examiner by Mr. Spieler's law firm since 1977. Plaintiff PILLON found a home in the Miami Shores area through his realtor, Laura McCarthy. (Deposition of Gregory Pillon at 3–4). He had originally made an offer on the house requesting the seller to take back a mortgage. However, the seller was not agreeable to that financing arrangement. (Deposition of Gregory Pillon at 5). At that time, Plaintiff PILLON'S realtor advised him that SUBURBAN COASTAL might be a lending source. (Deposition of Gregory Pillon at 5). Plaintiff PILLON called SUBURBAN COASTAL and later went to a SUBURBAN office to complete a loan application. (Deposition of Gregory Pillon at 5–6). At that time, Plaintiff PILLON was advised of the interest rate on his loan. (Deposition of Gregory Pillon at 7).

Prior to the closing, Plaintiff PILLON received copies of all of the closing documents. (Deposition of Gregory Pillon at 9). Exhibit "D" attached to the Amended Complaint is a true copy of the TIL disclosure statement supplied to Plaintiff PILLON. He also received a "good faith estimate of closing costs" from the Defendant prior to the closing. Plaintiff PILLON'S former employer, Commonwealth Land Title Insurance Company, handled the closing at Commonwealth's offices. (Deposition of Pillon at 8, 14). The Defendant provided the form closing documents to Commonwealth, and a Commonwealth employee, acting as Defendant's agent, completed them. At the closing, Margie Rosell, an employee of Commonwealth, reviewed the settlement statement with Plaintiff PILLON and outlined the costs to be borne by the seller and those to be borne by the buyer. (Deposition of Gregory Pillon at 11). Plaintiff PILLON reviewed all of the documents at the closing and raised no questions about the docu-

ments. (Deposition of Gregory Pillon at 10). Plaintiff PILLON was aware that the mortgage he signed would be assigned to another holder. (Deposition of Gregory Pillon at 15).

The Plaintiffs allege that the TIL disclosure statements provided to them violated the Truth-In-Lending Act (hereinafter "TILA" or "the Act") and Regulation Z in four (4) respects:

1. The term "annual percentage rate" is allegedly not disclosed more conspicuously than other terminology required to be disclosed, an alleged violation of Regulation Z, 12 C.F.R. § 226.6(a);

2. The penalty charge for prepayment of the principal obligation is allegedly not disclosed accurately, thus allegedly violating Regulation Z, 12 C.F.R. §§ 226.8(b)(6), 226.6(c);

3. The fee for recording the assignments of the mortgages is allegedly improperly itemized and excluded from the finance charge, thus allegedly violating Regulation Z, 12 C.F.R. §§ 226.4(a)(8), 226.4(b), 226.4(e), and 15 U.S.C. § 1605;

4. The term "net proceeds" is allegedly improperly utilized, thus allegedly violating 15 U.S.C. § 1639.

The Plaintiffs seek to impose liability upon the Defendant pursuant to 15 U.S.C. § 1640. Subject matter jurisdiction exists pursuant to 15 U.S.C. § 1640(3). The Plaintiffs are "customers" of Defendant as defined in Regulation Z, 12 C.F.R. § 226.2(u), and "consumers" within the meaning of 15 U.S.C. § 1602(h). The credit extended here was "consumer credit" as defined in Regulation Z, 12 C.F.R. § 226.2(p). The Defendant concedes that it is a "creditor" as defined in 15 U.S.C. § 1602(f) and Regulation Z, 12 C.F.R. § 226.2(s). The Defendant further concedes that the TILA and implementing Regulation Z apply to the type of transaction involved in this case.

 Prior to an examination of the specific violations alleged in this case, a brief review of general principles relating to the Act is helpful. The purpose of the

TILA is to assure a meaningful disclosure of credit terms so that consumers may shop comparatively for credit. *Smith v. Chapman,* 614 F.2d 968, 971 (5th Cir.1980); *Charles v. Krauss Company, Ltd.,* 572 F.2d 544, 546 (5th Cir.1978); 15 U.S.C. § 1601. An objective standard is used in determining violations of the Act; it is not necessary that the Plaintiff consumer actually have been deceived in order for there to be a violation. *Zamarippa v. Cy's Car Sales, Inc.,* 674 F.2d 877, 879 (11th Cir.1982); *Smith v. Chapman, supra,* 614 F.2d at 971. In fact, the purpose of the Act is more readily served by allowing suits by consumers who are less easily deceived. *Id.* "Strict compliance" with the technical requirements of the Act is required. *Id.; Williams v. Western Pacific Financial Corp.,* 643 F.2d 331, 339 (5th Cir.1981). Once the Court finds a violation, no matter how technical, it has no discretion with respect to the imposition of liability. *Zamarripa, supra,* 674 F.2d at 879; *Charles v. Krauss Company, supra,* 572 F.2d at 546.

 "Strict compliance," however, "does not necessarily mean punctilious compliance if, with minor deviations from the language described in the Act, there is still substantial, clear disclosure of the fact or information demanded" by the Act. *Smith v. Chapman, supra,* 614 F.2d at 972; *see Western Pacific Financial Corp., supra,* 643 F.2d at 339; *Dixon v. D.H. Holmes Co.,* 566 F.2d 571 (5th Cir.1978). Applying an objective standard, the district judge should examine the provisions of the disclosure statement in the context of the specific documents and instrument reflecting the particular transaction in the case before the court, and, not reading one sentence or one line of the disclosure statement in isolation, determine whether there has been clear, substantial and accurate disclosure as required by the Act. *Smith v. Chapman, supra,* 614 F.2d at 972; *Dixon, supra.* In interpreting the TILA to determine whether a violation has occurred, it is appropriate for the Court to consider the purpose of the legislation. *See, e.g., Ford Motor Credit Co. v. Cenance,* 452 U.S. 155, 101 S.Ct. 2239, 2241–42, 68 L.Ed.2d 744 (1981); *Lyles v.*

*Commercial Credit Plan,* 660 F.2d 129, 132 (5th Cir.1981); *Smith v. Chapman, supra,* 614 F.2d at 975, 977; *Bussey v. Georgia Bankamericard,* 516 F.2d 452, 455, 457 (5th Cir.1975). Although the Act and regulations should be construed in a manner favoring the consumer, the Court "must not follow such a course if in doing so [it loses] sight of the purpose behind truth in lending legislation." *Lyles, supra,* 660 F.2d at 132. The Act should not be construed to "impose civil liability on the basis of an interpretation of technical disclosure requirements without clear foundation in either statutory language or policy." *Barbieri v. Commercial Credit Loans, Inc.,* 596 F.2d 660, 662 (5th Cir.1979). The Court "must avoid reaching beyond the purpose of the TILA in search of a violation." *Western Pacific Financial Corp., supra,* 643 F.2d at 338. As the Supreme Court recently observed:

> The concept of 'meaningful disclosure' that animates the TILA ... cannot be applied in the abstract. *Meaningful* disclosure does not mean *more* disclosure. Rather, it describes a balance between "competing considerations of complete disclosure ... and the need to avoid ... [informational overload]." [*Ford Motor Credit Co. v. Milhollin,*] 444 U.S. 555 at 568, 100 S.Ct., 790 at 798, 63 L.Ed.2d 22.

*Cenance, supra,* 101 S.Ct. at 2241; *see Lyles, supra,* 660 F.2d at 132; *Western Pacific Financial Corp., supra,* 643 F.2d at 338.

Although not directly relevant or applicable to this case, the Court notes that on October 1, 1982, the Truth-In-Lending Simplification and Reform Act of 1980, Pub.L. No. 96–221, tit. VI, 94 Stat. 132, 168 (1980) becomes effective. The purpose of these amendments to the TILA is to provide the consumer with clearer credit information, make creditor compliance easier, limit creditor civil liability for statutory penalties to only significant violations, and strengthen the Act's administrative restitution enforcement. S.Report No. 96–73, 96th Cong., 2d Sess., *reprinted in* [1980] U.S.Code Cong. & Ad.News 236, at 280. Among the concerns that led to enactment of the amendments was the fact that:

[c]reditors ... have encountered increasing difficulty in keeping current with a steady stream of administrative interpretations and amendments, as well as highly technical judicial decisions. There is also evidence that many creditors have sincerely tried to comply with the act but, due to its increasing complexity and frequent changes, have nonetheless found themselves in violation and subject to litigation.

*Id.* at 281. Among the amendments is a provision that will make creditor compliance easier by requiring the Federal Reserve Board to promulgate model forms. *Id.* at 284. The amendments will also limit civil liability of creditors, as the Senate Report notes:

This bill would narrow a creditor's civil liability for statutory penalties to only those disclosures which are of central importance in understanding a credit transaction's cost or terms. It is anticipated that this will eliminate litigation which is based on violations of a purely technical nature.

*Id.* at 285. As noted *infra,* at least one of the alleged violations in this case involves a disclosure requirement which has been changed significantly by the amendments, such that compliance by the creditor will be greatly simplified under the revised provisions. The Court simply notes the existence of the amendments, however; they are not applicable in this case, and the Court shall apply the pre-amendment TILA provisions in the case *sub judice.*

With these general principles in mind, the specific violations alleged by the Plaintiffs are examined separately below.

### *Alleged Failure to Disclose "Annual Percentage Rate" More Conspicuously Than Other Terminology.*

Plaintiffs allege in Paragraph 11A of the Amended Complaint that the TIL disclosure form violates Regulation Z, 12 C.F.R. § 226.6(a), which provides in pertinent part as follows:

... where the terms "finance charge" and "annual percentage rate" are required to be used, they shall be printed more conspicuously than other terminology required by this part and all numerical amounts and percentages shall be stated in figures and shall be printed in not less than the equivalent of 10 point type, .075 inch computer type, or elite size typewritten numerals, or shall be legibly handwritten.

Plaintiffs contend that as a matter of law, the disclosure statement violates § 226.6(a) because the term "annual percentage rate"[1] is not printed more conspicuously than the term "amount financed," and "amount financed" is terminology required by § 226.8(d)(1). Plaintiffs do not contend and have not alleged that the "annual percentage rate" is expressed on the disclosure form in less than the equivalent of ten (10) point type. Therefore, the Court proceeds on the basis that there is no dispute that print of the sufficient size has been utilized in the disclosure statement.

Although this allegation if established would appear to be a mere technical violation of a *de minimis* nature, as noted *supra,* "strict compliance" with the Act is required, and liability is imposed for even technical violations. An objective standard is applied, so the fact that the Plaintiffs here were not misled or deceived does not preclude liability.

The Court has carefully considered the TIL disclosure statement involved in this case, and concludes that it does not violate § 226.6(a). The term "annual percentage rate" is printed in all capital letters and italicized. The disclosure of the annual percentage rate is conspicuous on the face of the statement, clearly advises the reader of

---

1. Section 226.6(a) also requires that the term "finance charge" be printed more conspicuously than other terminology required by Regulation Z. However, Plaintiffs do not allege a violation regarding the term "finance charge" because under Regulation Z this term need not be used "in the case of a loan secured by a first lien or equivalent security interest on a dwelling and made to finance the purchase of that dwelling...." Regulation Z, 12 C.F.R. § 226.-8(d)(3), *see* Memorandum in Support of Plaintiffs' Motion for Summary Judgment at 9, n. 1.

the credit terms, is segregated from other disclosures and contained in a separately numbered paragraph, is not hidden or obscured, and is easily discernible to the reader of the form. Accordingly, the Court concludes that the disclosure statement complies with § 226.6(a) of Regulation Z. *See Bussey v. Georgia Bankamericard,* 516 F.2d 452, 454 (5th Cir.1975).[2]

In reaching this conclusion, the Court has heeded the admonition that "strict compliance" does not necessarily mean "punctilious compliance" if there is still substantial, clear and accurate disclosure of the information demanded by the Act and Regulation. *Smith v. Chapman, supra,* 614 F.2d at 972; *see Western Pacific Financial Corp., supra,* 643 F.2d at 339; *Dixon, supra.* In the Court's view, to find a violation of § 226.6(a) here would constitute "reaching beyond the purpose of TILA in search of a violation," a result to be avoided. *Western Pacific Financial Corp., supra,* 643 F.2d at 338. A consumer reading the disclosure statement at issue here would be fully able to shop comparatively for credit, if the consumer sought to do so.

Accordingly, the Court having concluded that the disclosure statement does not violate § 226.6(a) of Regulation Z, Plaintiffs' allegation in Paragraph 11A of the Amended Complaint does not provide a basis for liability under 15 U.S.C. § 1640.

### *Alleged Inaccurate Disclosure of the Penalty Charge for Prepayment.*

Plaintiffs assert in Paragraph 11B of the Amended Complaint that the description of the prepayment penalty in the disclosure statement materially differs from the terms of the note regarding the prepayment penalty, thus violating provisions of Regulation Z. The Court has carefully considered the disclosure statement and note, and concludes that there is no violation.

The Plaintiffs allege a violation of § 226.-8(b)(6) of Regulation Z, which requires:

A description of any penalty charge that may be imposed by the creditor or his assignee for prepayment of the principal of the obligation (such as a real estate mortgage) with an explanation of the method of computation of such penalty and the conditions under which it may be imposed.

The Plaintiffs also allege a violation of § 226.6(c) of Regulation Z, which provides: *Additional information.* At the creditor's or lessor's option, additional information or explanations may be supplied with any disclosure required by this part, but none shall be stated, utilized, or placed so as to

---

**2.** The Court is mindful that the Plaintiffs' allegation in this regard is not merely an allegation of a violation of a technical provision of the Act and Regulation. Effective October 1, 1982, the Truth-In-Lending Simplification and Reform Act, *supra,* incorporates the requirement that "annual percentage rate" be disclosed "more conspicuously than other terms, data, or information provided in connection with a transaction...." 15 U.S.C. § 1632(a), as amended effective October 1, 1982; *see Dixey v. Idaho First National Bank,* 677 F.2d 749, 753 (9th Cir.1982). *Dixey* addressed an alleged violation of § 226.6(a) of Regulation Z, and the Ninth Circuit reversed the district court and held the defendant liable in that case. A copy of the disclosure form that was at issue in that case is not printed with the Ninth Circuit's opinion, although the Court did describe the form. 677 F.2d at 751–52. Each case presents a separate and distinct legal issue of whether the terms are "printed more conspicuously than other terminology" as required. In determining what is intended by the requirement that "annual percentage rate" be printed more conspicuously than other required disclosures, the Court is "mindful of [its] responsibility to construe the Act and regulations in a manner favoring the consumer, *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973), but '[it] must not blindly follow such a course if in doing so [it loses] sight of the purpose behind truth in lending legislation.' " *Lyles, supra,* 660 F.2d at 132. As noted, the disclosure of "annual percentage rate" is conspicuous on the face of the statement, clearly advises the reader of the credit terms, is segregated from other disclosures and contained in a separately numbered paragraph, is not hidden or obscured, and is easily discernible to the reader of the form. A consumer reading the form is fully able to effectively shop for and compare credit terms, should the consumer desire to do so. Accordingly, the Court concludes that the disclosure of "annual percentage rate" on the form complies with § 226.6(a) of Regulation Z.

mislead or confuse the customer or lessee or contradict, obscure, or detract attention from the information required by this part to be disclosed.

The only authority cited by the parties interpreting and applying § 226.8(b)(6) of Regulation Z is *Bartlett v. Commercial Federal Savings,* 433 F.Supp. 284 (D.Neb.1977). In *Bartlett* the Court concluded:

The Court finds that the defendant has adequately disclosed "any penalty charge that *may* be imposed by the creditor . . . for prepayment of the principal . . . and the conditions under which it *may* be imposed." [Emphasis added.] The lender is not required to identify the circumstances under which it may elect to forego its contractual rights. The Court does not agree with the plaintiff that 12 C.F.R. § 226.8(b)(6) requires disclosure of information beyond the maximum potential cost to a borrower for prepayment of the debt and warning as to the circumstances under which such costs could be incurred.

433 F.Supp. at 290–91.

■ Section 226.8(b)(6) does not require that the disclosure statement precisely mirror or set forth verbatim the terms of the prepayment penalty as set forth in the loan instrument. Had the drafters of the provision intended this, they would have explicitly required disclosure of the exact terms of any prepayment penalty as set forth in the instrument. Instead, what the section requires is a description of the penalty and an explanation of the method of computing the penalty and the conditions under which it may be imposed. As *Bartlett* notes, disclosure of the maximum potential cost to the borrower and warning as to the circumstances under which such costs could be incurred is sufficient. In the case *sub judice,* the disclosure statement clearly warns the Plaintiffs and sets forth the computational method which Defendant may employ in computing the penalty; it advises the Plaintiffs of their potential exposure, and of the parameters of the possible prepayment penalty. *Cf. Houston v. Atlanta Federal Savings & Loan,* 414 F.Supp. 851,

855 n. 4 (N.D.Ga.1976) (finding sufficient disclosure of late charge under § 226.-8(b)(4), provision of Regulation Z similar to § 226.8(b)(6)). This is all that § 226.8(b)(6) requires. To require a precise mirroring or verbatim recitation of the prepayment penalty terms in the disclosure statement might well run afoul of the Supreme Court's admonition that *meaningful* disclosure does not mean *more* disclosure, and that meaningful disclosure constitutes a balance between competing considerations of complete disclosure and "informational overload." *Cenance, supra,* 101 S.Ct. at 2241.

■ With regard to § 226.6(c) of Regulation Z, the Plaintiffs cite *Houston v. Atlanta Federal Savings & Loan, supra.* In *Houston,* the court concluded that a disclosure relating to a late charge as required by Regulation Z, § 226.8(b)(4) was confusing and misleading and therefore violated § 226.6(c). The Court has examined the note and disclosure statement in this case, and concludes that the information relating to the prepayment penalty is not "stated, utilized, or placed so as to mislead or confuse the customer . . ." under § 226.6(c) of Regulation Z. The Court is mindful that there is an error in the disclosure statement's description of the prepayment penalty in that the disclosure statement indicates that prepayment may be made "upon giving thirty days notice prior to prepayment. . . ." The note contains no provision regarding thirty days notice. Applying an objective standard, and not reading one sentence or line of the disclosure statement in isolation, viewing this disclosure statement in the context of this note in this case, *see Dixon, supra,* 566 F.2d at 571–72, the error does not lead to the conclusion that the prepayment penalty provision has been "stated, utilized, or placed so as to mislead or confuse the customer. . . ." As the Fifth Circuit has noted,

In determining whether a particular disclosure is clear or confusing . . . we must be guided by probabilities rather than mere possibilities. "The question is not whether something is capable of semantic

improvement but whether it contains a substantial and accurate disclosure . . . . " *Western Pacific Financial Corp., supra,* 643 F.2d at 339, *quoting Dixon, supra,* 566 F.2d at 573; *see Smith v. Chapman, supra,* 614 F.2d at 972. The Court finds the circumstances in this case somewhat similar to those in *Ford Motor Credit Co. v. Cenance,* 452 U.S. 155, 101 S.Ct. 2239, 68 L.Ed.2d 744 (1981). There the Supreme Court held that a statement on the contract notifying the purchaser that the contract was being assigned to a finance company was sufficient disclosure of the finance company's status as a creditor under Regulation Z, 12 C.F.R. § 226.6(d). This conclusion was based on the reasoning of lower courts "that the statement notifying the buyer that the contract was, upon acceptance, assigned to [the finance company] served the purpose of the Act by disclosing the nature of the relationship of the finance company to the transaction." *Id.* 101 S.Ct. at 2241. As the Supreme Court observed, "requiring more disclosure would not meaningfully benefit the consumer and consequently would not serve the purposes of the Act." *Id.* 101 S.Ct. at 2242. Similarly, in the case *sub judice,* the prepayment penalty disclosure advised the Plaintiffs of the prepayment penalty and set forth the computational framework and parameters of possible liability of the Plaintiffs thereunder. The disclosure served the purposes of the Act by advising the Plaintiffs of the prepayment penalty to enable them to compare credit terms. Requiring the disclosure statement to contain a more detailed description of the possible prepayment penalty such as the detailed provisions regarding its applicability only when the borrower prepays with money lent by a lender other than the note holder, or its applicability only when the prepayments exceed twenty percent (20%) of the principal amount, would have been "more" disclosure not necessarily beneficial to the consumer, in view of the need to avoid "informational overload." *See id.* 101 S.Ct. at 2241–41.[3]

Having carefully considered the prepayment disclosure in the disclosure statement and the note, the Court concludes that there has been substantial, clear and accurate disclosure of the prepayment penalty in the disclosure statement, that the disclosure has not been "stated, utilized, or placed so as to mislead or confuse," and therefore that § 226.6(c) has not been violated.

Moreover, § 226.6(c) applies only to "additional information" that is disclosed beyond what is required by the Act and Regulation Z. Because information relating to a prepayment penalty is required to be disclosed by § 226.8(b)(6), it is not "additional information" under § 226.6(c), and that section is therefore inapplicable. *See Western Pacific Financial Corp., supra,* 643 F.2d at 338–39.

The disclosure regarding the possible prepayment penalty was sufficient to comply with § 226.8(b)(6). The disclosure statement warned the Plaintiffs of the possible prepayment penalty, set forth the framework of the computational method utilized in figuring it, and disclosed the parameters of the possible prepayment penalty charge.

3. The Court notes that § 128(a)(12) of the Truth-In-Lending Simplification and Reform Act of 1980, 15 U.S.C. § 1638(a)(12), effective October 1, 1982, requires only that the creditor disclose:

A statement that the consumer should refer to the appropriate contract document for any information such document provides about nonpayment, default, the right to accelerate the maturity of the debt, and prepayment rebates and penalties.

Thus, under the Amendments to the Act, the creditor need only include in the disclosure statement a reference to the contract document regarding the prepayment penalty. Moreover, under the Amendments, 15 U.S.C. § 1640(a), as amended, no statutory penalty would be imposed for a violation of this requirement; only actual damages would be recoverable. As noted *supra,* the Amendments are not applicable to this case, but in view of purpose of the Amendments to simplify and clarify disclosure of credit terms, this represents a parallel conclusion by Congress that more disclosure is not necessarily meaningful disclosure, and that requiring disclosure of all of the specific and detailed terms of the prepayment penalty on the disclosure statement may result in "informational overload" not beneficial to the consumer nor supportive of the Act's purpose. *See* S.Report No. 96–73, *supra,* [1980] U.S.Code Cong. & Ad.News at 294.

The disclosure was not "stated, utilized or placed so as to mislead or confuse," even if § 226.6(c) were to apply to this disclosure. Accordingly, Paragraph 11B of the Amended Complaint does not provide a basis for liability under 15 U.S.C. § 1640.

*Alleged improper exclusion from finance charge and improper itemization of fee for recording assignment of mortgage.*

Plaintiffs allege in Paragraph 11C of the Amended Complaint that Item 6 of the disclosure statement improperly itemizes and excludes from the finance charge a mortgage recording fee for recording the assignments of Plaintiffs' mortgages by Defendant to its assignee. Plaintiffs allege that the form of disclosure of the fees on the disclosure statement violates Regulation Z, 12 C.F.R. §§ 226.4(a)(8), 226.4(b), 226.4(e), as well as 15 U.S.C. § 1605. The disclosure statements set forth the recording fees for the assignments under the heading "Recording Fees" and under the item "Other." The recording fee for the assignment was $4.00 for the SHRODERS and $9.00 for Plaintiff PILLON.

■ First, Plaintiffs contend that the fee for recording the assignments should not have been excluded from the finance charge. However, the Court concludes that specific provisions of both the Act and Regulation Z establish that the recording fees are properly excludable. The TILA, 15 U.S.C. § 1605, provides:

(d) If any of the following items is itemized and disclosed in accordance with the regulations of the Board in connection with any transaction, then the creditor need not include that item in the computation of the finance charge with respect to that transaction:

(1) Fees and charges prescribed by law which actually are or will be paid to public officials for determining the existence of or for perfecting or releasing or satisfying any security related to the credit transaction.

\* \* \* \* \* \*

(4) Any other type of charge which is not for credit and the exclusion of which

from the finance charge is approved by the Board by regulation.

(e) The following items, when charged in connection with any extension of credit secured by an interest in real property, shall not be included in the computation of the finance charge with respect to that transaction:

(1) Fees or premiums for title examination, title insurance, or similar purposes.

The provisions of Regulation Z are to the same effect. *See* § 226.4(b)(1), (4); § 226.4(e)(1). For example, § 226.4(b)(4) makes excludable from the finance charge "license, certificate of title, and registration fees imposed by law" so long as said fees are itemized and disclosed to the customer. Under the foregoing provisions, the fee for recording the assignments of the mortgages was properly excluded from the finance charge on the disclosure statements. The recording fee falls squarely within these provisions and was therefore properly excluded.

■ The Plaintiffs also contend that the fee for recording the assignment of the mortgages was not sufficiently itemized on the disclosure form. The Court finds this contention to be without merit. Item 6 of the disclosure statement lists several categories of items excluded from the finance charge: appraisal fee, credit report, title insurance, survey, hazard insurance, recording fees, documentary stamps, and intangible tax. The item "recording fees" is further itemized as follows: "deed," "mortgage," and "other." The fee for recording the assignments of the mortgages was entered under the item "other." The disclosure statement sufficiently itemizes and discloses the fee for recording the assignments under 15 U.S.C. § 1605(d) and Regulation Z, 12 C.F.R. § 226.4(b). Plaintiffs' reliance on *Grant v. Imperial Motors,* 539 F.2d 506, 510 (5th Cir.1976) is misplaced. In that case the court found a violation where the creditor had lumped together a license fee, certificate of title fee, and registration fee under the heading "official fees." Because there

was a failure to itemize, the court found a violation and imposed liability. In the case *sub judice,* the Defendant *did* itemize the fees; not only are the fees in Item 6 separately itemized, but the item "recording fees" is further itemized into various types of recording fees. The recording fees for the assignment were thus separately and conspicuously disclosed, and there was no attempt to hide them by lumping them into a single broad category. The recording fees were also disclosed on the REPSA form provided to the Plaintiffs.

Nor is *In re Weaver,* 632 F.2d 461, 465–66 (5th Cir.1980), cited by Plaintiffs, apposite here. There the court held that collateral appraisal fees were inadequately disclosed by the designation "C.A." on the disclosure statement under § 226.6 of Regulation Z, and that the collateral appraisal fees should have been included in the finance charge. *Weaver* is inapposite for two reasons. First, Plaintiffs here have made no contention based on § 226.6 of Regulation Z with regard to the recording fees. Even if they had, the fees are sufficiently identified and itemized as recording fees. Second, the collateral appraisal fees in *Weaver* do not fall under the provisions of Regulation Z and/or the Act specifically excluding certain fees and charges from the finance charge if they are adequately itemized and disclosed. The recording fees at issue in the case *sub judice* do fall within the specific provisions of the Act and Regulation Z, and are properly excluded from the finance charge.

The conclusion that the recording fees were properly excluded from the finance charge, and properly itemized, identified and disclosed is supported by *George v. General Finance Corp.,* 414 F.Supp. 33 (E.D. La.1976). In that case, the court held that a mortgage recording fee identified and disclosed as "official fees" and a charge identified as "notary fees" were properly excludable from the finance charge and properly itemized, identified and disclosed. The court reasoned that:

> Congress exempted these charges because they are effectively out of the lender's control and do not inure to his financial benefit. The charges that must be included in the finance charge are, inter alia, interest, service fees, and insurance required by the creditor. These are charges that the creditor does control and that do usually benefit him.
>
> Neither the statute nor the regulations demand a detailed explanation of the charges made for "official fees." Neither requires use of a particular term to describe the exempted charges. It is not necessary that the consumer be informed exactly what law permits the charge or to what official it is paid; it suffices if the charge in fact is "prescribed by law," and its payment disclosed.
>
> * * * * * *
>
> This case does not involve either concealment or the taking of a secret profit by the creditor. The official fees and notary fees were disclosed on the disclosure form. There is no allegation that exaction of the fees, or their amount, was unclear or inconspicuous.

*George, supra,* 414 F.Supp. at 35–36. Similarly, in the case *sub judice,* there has been no concealment or secret profit by the creditor, the fees were properly excluded from the finance charge, and they were properly itemized, identified and disclosed. The recording fees were clearly and accurately disclosed, and the Plaintiffs were notified of the fees to enable them to compare credit terms if they desired. There was substantial, clear and accurate disclosure of the information required by the Act. *See Smith v. Chapman, supra,* 614 F.2d at 972; *Western Pacific Financial Corp., supra,* 643 F.2d at 339; *Dixon, supra.* To find a violation here would constitute "reaching beyond the purpose of the TILA in search of a violation." *Western Pacific Financial Corp., supra,* 643 F.2d at 338; *see Lyles, supra,* 660 F.2d at 132. This Court, like the Fifth Circuit, declines to construe the Act "to impose civil liability on the basis of an interpretation of technical disclosure requirements without clear foundation in either statutory language or policy." *Barbieri v. Commercial Credit Loans, Inc.,* 596 F.2d 660, 662 (5th Cir.1979).

The Court concludes based on the foregoing that the fees for recording the assignments of the mortgage were properly excluded from the finance charge, and were clearly and properly itemized, identified and disclosed. Accordingly, Paragraph 11C of the Amended Complaint does not provide a basis for liability under 15 U.S.C. § 1640.

### Alleged improper utilization of the term "net proceeds."

 Plaintiffs allege in Paragraph 11D of the Complaint that the Defendant improperly utilized the term "net proceeds" in Item 3 of the disclosure statement, and thereby violated 15 U.S.C. § 1639(a), which provides in pertinent part:

> Any creditor making a consumer loan or otherwise extending consumer credit in a transaction which is neither a consumer credit sale nor under an open end consumer credit plan shall disclose each of the following items, to the extent applicable:
>
> (1) The amount of credit of which the obligor will have the actual use, or which is or will be paid to him or for his account or to another person on his behalf.

Neither the Act nor Regulation Z define the term "net proceeds," nor does either the Act or Regulation Z require or prohibit its use. A Federal Reserve Board interpretation of Regulation Z, 12 C.F.R. § 226.-8(d)(1), indicates that no disclosure need be made of "net proceeds," so long as the "amount financed" is disclosed as required. *See* Federal Reserve Board Staff Letter No. 982, September 24, 1975.[4] The Court concludes that use of the term "net proceeds" in Item 3 of the disclosure statement did not violate either the Act or Regulation Z.

Section 1639(a) of the Act is implemented through Regulation Z, 12 C.F.R. § 226.8(d), which provides in pertinent part:

> *Loans and other nonsale credit.* In the case of a loan or extension of credit which is not a credit sale, in addition to the items required to be disclosed under paragraph (b) of this section, the following items, as applicable, shall be disclosed:
>
> (1) The amount of credit, excluding items set forth in paragraph (3) of this section, which will be paid to the customer or for his account or to another person on his behalf, including all charges, individually itemized, which are included in the amount of credit extended but which are not part of the finance charge, using the term "amount financed."
>
> (2) Any amount referred to in paragraph (e) of this section required to be excluded from the amount in paragraph (d)(1) of this section, using, as applicable, the terms "prepaid finance charge" and "required deposit balance," and, if both are applicable, the total prepaid finance charge and required deposit balance.

The disclosure statement in the case *sub judice* complies with this provision. The prepaid finance charge is itemized and the total is disclosed. The amount financed is disclosed as required, by subtracting the prepaid finance charges from the total amount of the loan. The Defendant has in good faith complied with § 226.8(d) of Regulation Z, and accordingly there is no liability under the Act. There has been substantial, clear and accurate disclosure of the information required by the Act with regard to the matters alleged in Paragraph 11D of the Amended Complaint. *See Smith v. Chapman, supra,* 614 F.2d at 972; *Western Pacific Financial Corp., supra,* 643 F.2d

---

4. Federal Reserve Board Staff Letter No. 982 states in pertinent part:

> Your specific question is whether the disclosure of "net cash to borrower", "net proceeds to borrower" or words of similar meaning are required in addition to a statement of "amount financed" and related charges disclosed pursuant to § 226.8(d)(1).
>
> In staff's opinion, you are correct in your understanding that Regulation Z nowhere requires, either expressly or by implication, the use of such terms as "net cash to borrower", or "net proceeds to borrower." Section 226.-8(d)(1) prescribes only the term "amount financed" to indicate to the customer the amount of credit which will be made available to him; the method of determining that amount is specifically set forth in the regulation.

at 338; *Dixon, supra.* In the context of the particular transaction and disclosures involved in this case, and keeping in mind the purpose of the TILA, the Court concludes that there has been no violation of the Act as alleged in Paragraph 11D of the Amended Complaint, and there is no basis for liability under 15 U.S.C. § 1640 with regard thereto.

In view of all of the foregoing, Plaintiffs' Motion for Summary Judgment is DENIED, Defendant's Motion for Summary Judgment is GRANTED, and under even date herewith the Court shall enter Final Judgment in favor the Defendant.