**Michael H. LIPSON et al.**

v.

**BURLINGTON SAVINGS BANK.**

Civ. A. No. 76–124.

United States District Court,
D. Vermont.

March 29, 1977.

Nancy E. Kaufman, Rubin & Kaufman, Plainfield, Vt., for plaintiffs.

Richard H. Gregory, III, Dinse, Allen & Erdmann, Burlington, Vt., for defendant.

## MEMORANDUM AND ORDER

HOLDEN, Chief Judge.

This action has been instituted by three plaintiffs who obtained loans from the defendant Burlington Savings Bank (Bank) to obtain monetary damages, declaratory and injunctive relief for alleged violation of the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* All are agreed that there is no conflict among them concerning the controlling facts and that the case is proper for final disposition by way of summary judgment.[1]

The defendant is a mutual savings bank that is in the business of making loans and extending credit for which the payment of a finance charge is required. On June 25, 1975 the plaintiff Michael Lipson and wife Marjorie entered into a credit transaction with the defendant and acknowledged receipt of a disclosure statement for a mortgage loan of $26,200 to purchase their home. The plaintiff William A. Dalton and his wife obtained a mortgage loan of $36,500 from the defendant and acknowledged receipt of a disclosure statement. The plaintiff Frank L. Kochman and his wife Jennifer entered into a mortgage loan agreement and obtained a loan of $23,265 on September 16, 1971 to finance their purchase of a home in Huntington, Vermont and received a disclosure statement. In each transaction the disclosure statements were required by the provisions of the Act and Regulation Z, 12 C.F.R. §§ 226.1 *et seq.,* which called upon the lender to furnish the borrower with a statement of the effects of the loan agreement. The mortgages were given to secure promissory notes which are substantially the same in all important respects.

Prior to making the loans involved here, the Bank worked up a repayment schedule which amortized the loans over a period of years. The schedule provided for repayment of principal and interest earned on the principal over the life of the loan in equal monthly payments. Each installment is designed to pay, first, the interest accrued

---

1. Although the complaint is designated and designed as a class action, the court's order of January 17, 1977 postponed ruling on certification until the present summary judgment motion is decided.

during the preceding month, with the balance of the installment applied to reduce the principal. The amount of interest earned each month is determined by applying the specified rate of interest to the principal balance for that month. The total interest earned on a particular loan represents the sum of interest charges for each monthly period with the varying principal balances due for monthly periods regressively during the term of the mortgage obligation. In calculation of the interest earned on a loan the Bank anticipates that each installment will be paid on the first day of each month. In the event the borrower did not make his monthly payment on the first of the month, the schedule did not reflect the adjustment required to represent the interest actually earned by reason of the payment made out of time.

The mortgage notes executed by the plaintiffs specified the principal amount of the note, the interest rate and the number and amount of the installments. The notes further provided:

> Any or all installments of principal may be paid in advance of due date.
>
> If any installments of principal and/or interest shall be in default for sixty (60) days the full amount of this note remaining unpaid shall be immediately due and payable, if the payee so elects.
>
> The interest shall be computed upon the unpaid balance and shall be payable on the first day of each and every month and is included in the payments above specified. The same interest rate shall apply after default.

The disclosure statements furnished to the plaintiffs also set out the interest rate and annual percentage rate, the number, amount and due dates of each payment, and amount financed in each case. The state-

ment furnished to plaintiff Dalton further disclosed the finance charge and total of payments regarding his loan, which was not a first mortgage of a dwelling.[2]

The present litigation was generated by the defendant's decision to compute and charge interest on a daily basis. The Bank informed its debtors that effective March 1, 1976, it would charge on the daily principal balance due on all loans. The Bank sent its customers information about the new system and explained its new billing forms. This adjustment caused those who made payments prior to the due date to receive a reduction in interest owing according to the number of days of the advance payment, to be reflected in a reduced final payment at termination of the note. Those who made payments after the due date, the first of each month in the case of the present plaintiffs, would be charged the daily interest for each day after the due date, which would be reflected in an increased or additional payment due and paid on final termination of the obligation.

The plaintiffs charge separate theories of statutory or regulatory violations in each of three counts. Count I of the complaint alleges that the change in the bank's practices effects an undisclosed penalty in the nature of a default or delinquency charge, in violation of 15 U.S.C. § 1639(a)(7). Count II claims that the new interest computation system results in an undisclosed change in the number or amount of payments, in contravention of 15 U.S.C. § 1639(a)(6).[3] Count III charges a violation of 12 C.F.R. § 226.4(a)(1) regarding time price differentials or systems of discount.

The pertinent provisions of 15 U.S.C. § 1639(a) are:

> Any creditor making a consumer loan or otherwise extending consumer credit in a

---

**2.** 15 U.S.C. § 1639(a)(4) exempts purchase money mortgages of dwellings from disclosure of the amount of the finance charge.

**3.** The complaint erroneously advances 15 U.S.C. § 1638(a)(9) as the basis for the claim in Count I, and *id.* § 1638(a)(8) as the foundation for Count II. Section 1638 controls only cases of credit *sales* not under open end credit plans,

while § 1639 actually suggests the basis for relief on the facts alleged relating to *loans*. Because the question presented by the defendant's summary judgment motion is whether the plaintiffs can establish any right to relief under the facts alleged in their complaint and supporting affidavits, this technical oversight is unimportant.

transaction which is neither a consumer credit sale nor under an open end consumer credit plan shall disclose each of the following items, to the extent applicable:

.    .    .    .    .

(6) The number, amount, and the due dates or periods of payments scheduled to repay the indebtedness.

(7) The default, delinquency, or similar charges payable in the event of late payments.

12 C.F.R. § 226.4 provides:

(a) *General rule.* Except as otherwise provided in this section, the amount of the finance charge in connection with any transaction shall be determined as the sum of all charges, payable directly or indirectly by the customer, and imposed directly or indirectly by the creditor as an incident to or as a condition of the extension of credit, whether paid or payable by the customer, the seller, or any other person on behalf of the customer to the creditor or to a third party, including any of the following types of charges:

(1) Interest, time price differential and any amount payable under a discount or other system of additional charges.

.    .    .    .    .

The principal question presented for decision at this point, as framed by the parties at the hearing on the defendant's motion, is whether any additional obligation imposed by the *computation of daily interest,* due by reason of late payment during the term of the loan, constitutes an undisclosed default or delinquency charge. The defendant's position is that additional interest at the contract rate on default is not a delinquency

charge which must be disclosed under the Act. Alternatively, the Bank submits that the promissory notes' provision that "the same interest rate shall apply after default"[4] sufficiently discloses the required information in this regard.

In *Fisher v. Beneficial Finance Co.,* 383 F.Supp. 895 (D.R.I.1974), it was held that "additional interest charged at the contractual rate, in the event of late payment, falls within the finance charge and does not constitute a default ·delinquency, or similar charge." *Id.* at 898.[5] In *Fisher,* however, the Statement of Disclosure specifically informed the borrower:

Each instalment shall be as shown hereon if the loan is paid according to contract; otherwise, the final instalment shall be equal to the unpaid principal balance plus charges accrued and unpaid at the time said final instalment is paid:

*Id.* The plaintiffs distinguish their case on the basis that the promissory notes, rather than the disclosure forms, were employed to set out the information regarding post-default accumulation of interest: The plaintiffs' distinction is undercut by 15 U.S.C. § 1639(b) which permits disclosure in the note, and 12 C.F.R. § 226.8(a)(1), which specifies that all of the disclosures shall be made together on either:

(1) The note or other instrument evidencing the obligation on the same side of the page and above or adjacent to the place for the customer's signature; or

(2) One side of a separate statement which identifies the transaction.

Here, of course, as appears above, the mortgage notes provide that interest shall be

---

**4.** The affidavits of each of the three plaintiffs declare that "[w]ith reference to paying late, the promissory note stated only that the Bank could accelerate if I ever missed making payments for 60 or more days." The promissory note form entered into the record in blank by the defendant, however, includes the provision quoted in the text. Despite the plaintiffs' good faith recollection of the contents of the note, the contents of the actual form as disclosed in the record belie any material issue of fact requiring trial of this point.

**5.** 12 C.F.R. § 226.4(c) provides:

A late payment, delinquency, default, reinstatement, or other such charge is *not* a finance charge if imposed for actual unanticipated late payment, delinquency, default, or other such occurrence.

(Emphasis added.) This provision in no way undermines the quoted reasoning in *Fisher,* since it relates only to the definition of finance charges and does not determine whether the interest charge here at issue is a late payment or delinquency charge in the first instance.

computed on the unpaid balance payable on the first day of each and every month and "[t]he same interest rate shall apply after default."

■■■ Even without this disclosure, the defendant's change in practice would not appear to violate the requirements of the Act and Regulation Z. A default or delinquency charge is a charge over and above the contractual cost of credit, incurred solely as a penalty for default. The defendant's decision to begin charging interest at the contract rate on a daily basis[6] does not penalize late payment, but merely accounts precisely for the amount of time which the borrower takes to repay his obligation. This much of the *Fisher* rule is confirmed by the Staff of the Federal Reserve Board in its interpretive letter No. 1099 (August 10, 1976):

> Assuming that the loan in question was a simple interest loan, it is the opinion of the staff that the interest charges calculated on the unpaid balance for the interim period between the monthly due date and the payment date are not considered charges subject to disclosure under Regulation Z. It is inherent in the definition of a simple interest instalment loan that interest be calculated and charged on a daily basis on the unpaid balance of the loan; therefore, late or early payments will affect the amount of the final payment. It is the staff's opinion that in the case of a simple interest instalment loan, the disclosures required under Regulation Z should be made on the basis that the loan payments will be made when due. Therefore, the calculation of daily interest on the unpaid balance between the due date and the time the scheduled payment was to be made should not be reflected in the determination of the annual percentage rate. In addition, since the practice in question is fundamental to the concept of a simple interest instalment loan, it does not constitute a late payment charge subject to disclosure by Regulation Z . . . .

See also Federal Reserve Board interpretive letter No. FC–0009 (Oct. 12, 1976). While the staff's interpretation is, of course, not binding, this expression of the principle here at issue is persuasive. *See generally* 15 U.S.C. § 1604; *Ives v. W. T. Grant Co.*, 522 F.2d 749 (2d Cir. 1975); *Philbeck v. Timmers Chevrolet, Inc.*, 499 F.2d 971 (5th Cir. 1974); *rehearing denied*, 502 F.2d 1167; *Bone v. Hibernia Bank*, 493 F.2d 135 (9th Cir. 1974); *Barksdale v. Peoples Financial Corp.*, 393 F.Supp. 112 (N.D.Ga.1975); *Ratner v. Chemical Bank New York Trust Co.*, 329 F.Supp. 270 (S.D.N.Y.1971); *Stefanski v. Mainway Budget Plan, Inc.*, 326 F.Supp. 138 (S.D.Fla.1971), *rev'd on other grounds*, 456 F.2d 211 (5th Cir. 1972). The court holds that on the agreed facts presented, defendant's conversion to the practice of computing interest on a daily basis effective March 1, 1976 does not constitute a default or delinquency charge within the requirement of 15 U.S.C. § 1639(a)(7).

■■■ The court is in agreement with the parties' position, taken at hearing on this motion, that the claim asserted in Count I predominates the complaint. The reasoning of the *Fisher* case and the opinion of the Federal Reserve Board Staff are persuasive on the point that the defendant's practice in this respect does not work a change in the number, amount and due dates of the schedule payment requiring disclosure other than the statement made at the time of the loans, as provided in 15 U.S.C. § 1639(a)(6), as alleged in Count II.

■■■ Neither does it appear that the change to daily interest computation offends the requirements of 12 C.F.R. § 226.-4(a)(1) as claimed in Count III. No additional interest is charged above that specified in the instruments which evidence the obligations. According to the undisputed facts, the gains achieved by payment prior to the due date and the interest earned from delayed payments beyond the due date, are merely adjusted in the final payment which discharges the obligation in full. As appears above, the accumulation

---

**6.** The plaintiffs make no claim that the change to daily interest computation violates the accounting restrictions of 12 C.F.R. § 226.5 or § 226.506.

of interest at the contract rate, as it relates to § 1639(a)(7), is implicit in the nature of a simple interest loan. Section 1639(a)(6) and 12 C.F.R. § 226.4(a)(1) should not be read to effect a contrary result.

The purpose of the Truth in Lending Act is to enable borrowers readily to compare the costs of credit under the various available terms. 15 U.S.C. § 1601; 12 C.F.R. § 226.1(a)(2); *W. T. Grant Co. v. Comm'r*, 483 F.2d 1115 (2d Cir. 1973). The court concludes that accumulation of interest at the agreed upon rate when the borrower does not repay according to schedule is an implicitly understood aspect of simple interest loans which need not be spelled out in any greater detail than the defendant has done in order to facilitate informed comparison of credit terms. So long as no charge in excess of the contractual rate of interest is imposed during a period of default, changes in the amount of the borrower's obligation or his repayment schedule brought about through failure to pay according to the loan agreement, are consequences that reasonably result from acts of the borrower. *See* 15 U.S.C. § 1634; 12 C.F.R. § 226.6(g) & n.6.

It is ORDERED:

*The defendant's motion for summary judgment is granted. The Clerk will enter judgment accordingly.*