JASPER COUNTY SAVINGS
BANK, Appellee,

v.

David GILBERT and Lynn
Gilbert, Appellants.

No. 67026.

Supreme Court of Iowa.

Dec. 22, 1982.

Martin Ozga and Kathleen E. Keest of Legal Services Corp. of Iowa, Des Moines, for appellants.

Lee M. Walker of Walker & Neighbor, Newton, for appellee.

Considered by LeGRAND, P.J., and UHLENHOPP, HARRIS, McGIVERIN and CARTER, JJ.

McGIVERIN, Justice.

Defendants David and Lynn Gilbert were granted discretionary review of the district court's ruling that evidence failed to substantiate any of the Truth in Lending Act· violations alleged in their counterclaim. Defendants contend that plaintiff Jasper County Savings Bank (Bank) committed seven technical violations of the Truth in Lending Act (the "Act"), 15 U.S.C. § 1601 *et seq.* (1976) (amended 1980), and Federal Reserve Board Regulation Z, 12 C.F.R. Part 226 (1979), which implements the Act. Specifically, defendants allege violations of sections 1631(a) and 1639(a)(5)–(8),[1] and the corresponding regulations. We affirm the judgment of the district court.

In March of 1979, defendants executed a promissory note in favor of plaintiff for $2,104.42 and interest. This amount included new advances totaling $1700; $277.78 which was used to pay off a previous note entered into by Lynn Gilbert; and the balance which was for insurance costs. After five timely payments, defendants made a few sporadic payments for a total of approximately $908. The Bank advised defendants of the time period in which they could cure default. The default was not cured and the Bank repossessed a 1978 Yamaha Daytona, one of the items of collateral; defendant David Gilbert aided the bank in repossessing the motorcycle. The motorcycle was sold for its current fair market value, $700, and the entire amount was credited to defendants' account. The balance due was $708.96.

Plaintiff filed a small claims action in district court to recover the balance due. Defendants filed an answer and counterclaim alleging violations of the Truth in Lending Act. Since the counterclaim exceeded $1000 in value, the matter was ordered to be tried by regular procedure in district court. Iowa Code § 631.8(4) (1981).

By stipulation of counsel, it was agreed that the matter would be submitted to the district court upon the evidence contained in depositions of David Gilbert and Thomas J. Hermsen, vice-president of plaintiff Bank, and any exhibits introduced during· depositions. The district court entered a judgment for the plaintiff for the amount due on the note and denied defendants' counterclaim, holding that there had been compliance with the Truth in Lending Act.

Defendants sought discretionary review pursuant to Iowa R.App.P. 3, and we certified the appeal. Our review of this matter is on error. Iowa R.App.P. 4.

I. *The nature of the appeal.* Defendants do not contest the judgment awarding the Bank $708.96, the balance due on the note. Nor do defendants contend that they were misled by the disclosure statement used in their transaction with the Bank. Defendants' sole contention on appeal is that technical defects in the document labeled "Security Agreement, Note and Dis-

---

1. Although section 1639 was repealed effective October 1, 1982, its provisions are controlling in this case since it was in effect at the time the note was signed. Defendants' references to section 1638 are, therefore, in error.

closure Statement" make plaintiff liable to defendants for twice the finance charge, the costs of the action and reasonable attorney fees. 15 U.S.C. § 1640(a).

■ The Truth in Lending Act was passed to achieve "the informed use of credit," which "results from an awareness of the costs thereof by consumers." 15 U.S.C. § 1601. Credit terms are required to be disclosed to consumers so that they can compare the costs of credit. *Id. See Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 363–66, 93 S.Ct. 1652, 1657–59, 36 L.Ed.2d 318, 326–28 (1973).

■ The Federal Reserve Board is empowered to construe the Act's provisions and to prescribe regulations to carry out the legislative purpose. 15 U.S.C. § 1604. But even the regulations cannot speak explicitly to every credit disclosure issue; absent a clear expression, it is appropriate to defer to administrative interpretations of relevant regulations. *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 568–69, 100 S.Ct. 790, 798–99, 63 L.Ed.2d 22, 33 (1980).

II. *Alleged violations.* Plaintiff contends that defendants are raising minor technicalities solely to offset the amount they admittedly owe on the loan. In essence then, plaintiff asks us to hold that minor, technical violations of the Act should be excused.

■ Plaintiff's argument is not without merit; federal courts have recognized that it is not necessary to "go to the extreme of awarding liability for all technical violations of the Act and Regulation Z." *Dixey v. Idaho First National Bank*, 677 F.2d 749, 752 (9th Cir.1982); *Dixon v. D.H. Holmes Co., Ltd.*, 566 F.2d 571 (5th Cir.1978) (per curiam) ("substantial and not sacramental compliance is what is necessary"); *Herbst v. First Federal Savings and Loan Association of Madison*, 538 F.2d 1279, 1283 (7th Cir.1976) ("a rule of substantial rather than strict compliance should be adopted"); *George v. General Finance Corp. of Louisiana*, 414 F.Supp. 33, 35 (E.D.La.1976) ("[Truth in Lending Act] is to be read in a manner calculated to protect borrowers, not

as a maze containing obscure technical pitfalls for creditors"); *cf., Smith v. No. 2 Galesburg Crown Finance Corp.*, 615 F.2d 407, 416–17 (7th Cir.1980); *Gennuso v. Commercial Bank & Trust Co.*, 566 F.2d 437, 443 (3d Cir.1977); *Pennino v. Morris Kirschman and Co.*, 526 F.2d 367, 370 (5th Cir.1976).

The excusal of technical errors is not permissible, however, if the error involves disclosure of the finance charge or annual percentage rate. As the Supreme Court has recognized, "the Federal Reserve has adopted what may be termed a 'bottom-line' approach: that the most important information in a credit purchase is that which explains differing net charges and rates." *Ford Motor Credit Co.*, 444 U.S. at 569, 100 S.Ct. at 798, 63 L.Ed.2d at 33.

■ A. *Disclosure of annual percentage rate.* Defendants contend that the Bank's disclosure of a 15% annual percentage rate (APR) did not comply with the statutory requirement that the annual percentage rate must be disclosed "at least to the nearest quarter of 1 percent." 12 C.F.R. § 226.5(b)(1) (1979). The loan was a simple interest loan; the 15% APR was based on the assumption that the payments would be made when due. If the customer is late in making payments on a simple interest loan, the allocation between principal and interest is figured on the basis of the interest rate and the number of days the payment is late. As a result, late payments create additional charges which defendants assert should be reflected in the APR.

We conclude that the Act does not require the lender to disclose that the dollar amount of the costs of credit will increase if the consumer makes late payments. The increased costs are merely a reflection of the increased amount of time the borrowers took to repay the obligation and is an implicitly understood aspect of simple interest loans which need not be spelled out. *Lipson v. Burlington Savings Bank*, 428 F.Supp. 1073, 1079 (D.Vt.1977).

This result is confirmed by the staff of the Federal Reserve Board in its unofficial

interpretive letter No. 1099 (August 20, 1976); reprinted in [1969–74 Transfer Binder] Consumer Credit Guide (CCH) ¶ 31,439:

It is inherent in the definition of a simple interest installment loan that interest be calculated and charged on a daily basis on the unpaid balance of the loan; therefore, late or early payments will affect the amount of the final payment. It is the staff's opinion that in the case of a simple interest installment loan, the disclosures required under Regulation Z should be made on the basis that the loan payments will be made when due. Therefore, the calculation of daily interest on the unpaid balance between the due date and the time the scheduled payment was to be made should not be reflected in the determination of the annual percentage rate.

Additionally, the disclosure statement signed by defendants clearly stated that the final payment was an estimate which depended on the timeliness of all previous payments. *Cf., Matter of Dickson,* 432 F.Supp. 752, 758 (W.D.N.C.1977) (disclosure statement left erroneous impression that stated finance charge was the finance charge due regardless of any prior late payments).

■ The "meaningful disclosure" standard of the Act, 15 U.S.C. § 1601, does not require us to consider mere possibilities; we must be guided by probabilities. *Williams v. Western Pacific Financial Corp.,* 643 F.2d 331, 339 (5th Cir.1981) (per curiam). There is no probability that the note signed by defendants did not clearly disclose that the final payment was subject to change if payments had not been made when due.

■ We next consider defendants' remaining contentions; all involve additional technicalities. This disclosure statement is not a model or semantic masterpiece. But it accomplishes what the Act contemplates: it makes clear to the borrowers the cost of credit, the terms of credit, and what happens if the contract is not fulfilled in the manner specified. *Dixon,* 566 F.2d at 571. A brief discussion of each allegation demonstrates our point.

B. *Computation of delinquency charge.* Defendants contend (1) a paragraph explaining delinquency charges on precomputed loans is misleading on a disclosure statement for a simple interest loan, and (2) no method for computing a delinquency charge on simple interest loans is disclosed. We conclude defendants' arguments are without merit.

■ First, the disclosure form used here by the Bank could be used either for a precomputed or a simple interest loan; an "x" in the appropriate box, however, indicated this was a simple interest loan. As stated above, we are guided by probabilities not possibilities, and we believe that today's consumers have sufficient sophistication to realize that a paragraph which discusses "precomputed installments" applies to a precomputed interest loan, not a simple interest loan as existed here; and therefore, the paragraph, though irrelevant to the present transaction, does not violate the meaningful disclosure requirements.

■ Second, the "delinquency charge" required to be disclosed by section 1639(a)(7) and 12 C.F.R. section 226.8(b)(4) does not encompass the increased cost of interest due to a customer's failure to make timely payments. *Fisher v. Beneficial Finance Co. of Hoxsie,* 383 F.Supp. 895, 899 (D.R.I.1974); *Lipson,* 428 F.Supp. at 1078. Federal Reserve Board Official Staff Interpretation FC–0083 (June 20, 1977) offers additional support; reprinted in [1974–77 Transfer Binder] Consumer Credit Guide (CCH) ¶ 31,611:

... A payment that is made by the borrower after its due date will result in the accrual of more interest, just as an installment made in advance of its due date will result in the accrual of less interest. As to successive payment cycles, interest accrues from the date of the immediately preceding payment.

It is staff's opinion that ... the continued accrual of interest beyond the date on which an installment is due does not constitute a "default, delinquency, or similar charge payable in the event of late

payment" for purposes of § 226.8(b)(4). If a creditor imposes a late payment charge in addition to the accrual of simple interest, such charges are, of course, subject to disclosure under § 226.8(b)(4). To the same effect is Federal Reserve Board Unofficial Staff Interpretation No. 1099 (Aug. 10, 1976).

What plaintiff disclosed was not misleading and it had no obligation to make any additional disclosures in this regard.

C. *Disclosure of total number of payments due.* Defendants claim that the Bank was required to disclose the total number of payments due under the loan agreement. 15 U.S.C. § 1639(a)(6) ((a) any creditor ... shall disclose ... (6) The number, amount, and the due dates or periods of payments scheduled to repay the indebtedness.); 12 C.F.R. § 226.8(b)(3). The note signed by defendants states that the debtors promise to pay "in 23 equal installments of $102.00 each and one final payment of $108.24 ... "

We agree with the district court that the number of payments was adequately disclosed. *Brown v. Providence Gas Co.,* 445 F.Supp. 459, 463 (D.R.I.1976) ("The 'final payment' language of the present contract ... calls attention to the fact that after 23 payments have been made, another payment is due."). There is meaningful disclosure under section 1639(a)(6) even if the debtor is burdened with a simple arithmetical calculation. *See Barbieri v. Commercial Credit Loans, Inc.,* 596 F.2d 660 (5th Cir. 1979) (section 1639(a)(1) is satisfied if disclosure statement lists separately the amount used to retire prior indebtedness and the amount paid to customers; creditor not required to disclose the sum of the two figures); *Grimes v. Termplan Inc. of West End,* 477 F.Supp. 87 (N.D.Ga.1979) (burden of simple addition on the borrower desirous of determining the total amount of the prepaid finance charge does not run afoul of "meaningful disclosure" requirement).

D. *Security interest.* Defendants allege three separate violations concerning the Bank's security interest: (1) the security interest was not clearly identified; (2) the type of security interest obtained was not disclosed; and (3) the Bank's security interest in proceeds was not disclosed on the first page of the note. 15 U.S.C. § 1639(a)(8); 12 C.F.R. §§ 226.8(a)(1) and (b)(5). In essence, defendants are asserting that the Bank's disclosures were confusing. "The question is not whether something is capable of semantic improvement but whether it contains a substantial and accurate disclosure." *Williams,* 643 F.2d at 339 (citations omitted).

We conclude that the Bank's disclosure of its security interests was substantial and accurate. It is not necessary that the description of the security interest be specific as long as it reasonably identifies what is described. Iowa Code § 554.-9110 (1979); *see Basham v. Finance America Corp.,* 583 F.2d 918, 924 (7th Cir.1978), *cert. denied sub nom DeJaynes v. General Finance Corp. of Illinois,* 439 U.S. 1128, 99 S.Ct. 1046, 59 L.Ed.2d 89 (1979) (for purposes of section 1639(a)(8) extent of security interest determined by state law). Neither is it necessary that the disclosure statement specify the "type" of security interest. The adequacy of the disclosure depends, at least in part, on the audience for which the disclosure was intended, *Williams,* 643 F.2d at 338; the lender is not required to write a legal treatise for the borrower. *Matter of Dickson,* 432 F.Supp. at 757.

Finally, the Bank's security interest in proceeds was not required to be disclosed at all, as it was merely incidental. This view is supported by the revised regulation, 12 C.F.R. § 226.2(a)(25) (1982), which defines a security interest as follows:

"*Security interest*" means an interest in property that secures performance of a consumer credit obligation and that is recognized by state or federal law. It does not include incidental interests such as interests in proceeds ....

The Supreme Court has stated that the revised regulation does not change the meaning of "security interest" in all respects as used in the original regulation; it merely clarifies and distinguishes some se-

curity interests which need not be disclosed. *Anderson Bros. Ford v. Valencia,* 452 U.S. 205, 214–15, 101 S.Ct. 2266, 2271, 68 L.Ed.2d 783, 791 (1981) (security interest in proceeds of any returned or unearned insurance premiums on an automobile need not be disclosed). By analogy, we find the Supreme Court's reasoning equally applicable to the continuance of a security interest in identifiable proceeds from the sale of the collateral. Iowa Code § 554.9306(2).

Contrary to defendants' position, "meaningful disclosure" does not always mean more disclosure. The complete disclosure advocated by defendants may reach the point of informational overload. *See Ford Motor Credit Co.,* 444 U.S. at 568, 100 S.Ct. at 798, 63 L.Ed.2d at 33.

E. *Meaningful sequence.* Lastly, we consider defendants' contention that the terms of the disclosure statement were not in a meaningful sequence. 15 U.S.C. § 1631(a); 12 C.F.R. § 226.6(a). Again, we conclude that defendants' allegation is unsubstantiated.

Specifically, defendants claim that the Bank ignored the first prong of the meaningful sequence requirement: "disclosures which are logically related must be grouped together rather than scattered through the contract." *Allen v. Beneficial Finance Co. of Gary, Inc.,* 531 F.2d 797, 801 (7th Cir.), *cert. denied,* 429 U.S. 885, 97 S.Ct. 237, 50 L.Ed.2d 166 (1976) (groupings of terms located at random; columns of numbers appeared to add up when in fact they did not; same charge listed twice under different titles). The disclosure statement does refer to the Bank's security interest in three nonsequential paragraphs but defendants do not explain how this is misleading or confusing; they merely contend that all three paragraphs should have been grouped together.

*Allen,* however, does not mandate a mechanical or rigid form of disclosure; it merely requires that the creditor strive for clarity in a manner which facilitates consumer comprehension. A departure from the requirements of meaningful sequence is not a violation if the creditor shows that the departure enhances clarity of disclosure, facilitates customer comprehension or is required because of the impracticability of any other arrangement. *Id.* at 802. We agree with the finding of the district court that the arrangement of paragraphs with the most essential provisions first helped to promote a full disclosure of the credit terms in a logically sequential manner. Plaintiff's arrangement of terms is justified in that it facilitates consumer comprehension.

We have considered all of defendants' contentions and conclude that none of the alleged violations require that the Bank be assessed the statutory penalty. Defendants' counterclaim was properly denied.

AFFIRMED.