Roosevelt WILLIAMS and Dorothy Williams, Plaintiffs-Appellees,

v.

WESTERN PACIFIC FINANCIAL CORPORATION, Defendant-Appellant.

No. 80–7137.

United States Court of Appeals, Fifth Circuit.

Unit B

April 23, 1981.

---

Hatcher, Dorsey, Irvin & Pressley, Henry M. Hatcher, Jr., Atlanta, Ga., for defendant-appellant.

Bowen, Derrickson, Goldberg & West, Ralph Goldberg, Atlanta, Ga., for plaintiffs-appellees.

Before HILL and FRANK M. JOHNSON, Jr., Circuit Judges and SCOTT *, District Judge.

PER CURIAM:

Roosevelt and Dorothy Williams brought an action under the Truth in Lending Act, 15 U.S.C.A. § 1601 *et seq.*, TILA, contending *inter alia* that Western Pacific Financial Corporation failed to make certain disclosures required by the TILA and 12 C.F.R. 226.1 *et seq.* (Regulation Z)[1] in connection with a loan to purchase real property, secured by a security deed. The district court held that Western Pacific had violated the TILA and Regulation Z by failing to disclose the 10-day limitation imposed by Georgia Code § 109A–9–204(4)(b) on a security interest in after-acquired consumer goods, and Western Pacific appeals. We reverse and remand.

Western Pacific made a loan to Roosevelt and Dorothy Williams in the principal amount of $18,350 to facilitate their purchase of a home at 1056 Happy Valley Trail, Atlanta, Georgia, located on Lot 21 of Moreland Estates. To secure their note, the Williams executed a security deed granting Western Pacific a security interest in a tract or parcel of land described as Lot 21 of Moreland Estates and

*all buildings and improvements thereon (or that may hereafter be erected thereon);* together with the hereditaments and appurtenances and all other rights thereunder belonging, or in anywise now or hereafter appertaining, and the reversion, remainder and remainders, rents, issues and profits thereof, *and all plumbing, heating and lighting fixtures, and equipment now or hereafter attached to or used in connection with said premises.* R. 77 (Emphasis added).

At the closing, Western Pacific supplied the Williams with a form prepared by Western Pacific entitled "Notice to Customer Required by Federal Law and Federal Reserve Regulation Z." Among the disclosures contained in the form was the following:

SECURITY INTEREST—The Lender's security interest in this transaction is a trust deed/mortgage covering real property and improvements located at 1056 Happy Valley Trail, Atlanta, Georgia and certain other rights and property relating thereto, all as described in the trust deed/mortgage a copy of which will be provided. The trust deed/mortgage secures approved future advances and other indebtedness, the terms of which are described therein. *The trust deed/mortgage also covers after acquired property located on or attached to the described real property. A security agreement will not·be taken on furniture, fixtures, and equipment situated therein.* R. 83 (Emphasis added).

On July 7, 1978, the Williams filed this action claiming that Western Pacific violated the TILA and Regulation Z, § 226.-8(b)(5), in connection with their loan by failing to disclose the 10-day limitation on a lender's security interest in after-acquired consumer goods provided in Georgia Code § 109A–9–204(4)(b).[2] Both parties filed motions for summary judgment which were referred to the United States Magistrate. In his Report and Recommendation, the magistrate concluded that the language of the security interest disclosure (italicized in the quotation, *supra*) narrowed the category

---

* District Judge of the Middle District of Florida, sitting by designation.

1. *Also found at 15 U.S.C.A. foll. § 1700. All* subsequent cites to sections of Regulation Z coincide with their enumeration at 12 C.F.R., Part 226 Truth In Lending.

2. The Williams also claimed a violation of Georgia's usury laws. That pendant claim was dismissed by the district court.

Three other TILA claims are also not before us on appeal. The district court, finding a violation as to one claim, entered judgment for the *Williams on the basis of that claim alone, in* accordance with what counsel informs us is the standard practice with regard to the handling of TILA actions. We are concerned that this practice would appear to be contrary to Rule 54(b), *Fed.R.Civ.P.* Inasmuch as neither party has raised the issue, however, we express no opinion on it here.

of after-acquired property to the point that no "consumer goods" could be deemed to have been included in Western Pacific's security interest. Accordingly, the 10-day limitation was inapplicable and, thus, not required to be disclosed.

The district court disagreed, focusing upon the disclosure statement that "[t]he trust deed/mortgage also covers *after acquired property located on* or attached to *the described property.*" The court concluded that the subsequent sentence excluding "furniture, fixtures, and equipment" did not rule out other after-acquired consumer goods which might be located on the property described in the security deed.[3] The district court held that the language used in the disclosure was so vague as to encompass at least certain consumer goods within the property subject to Western Pacific's security interest and, thus, that failure to disclose the 10-day limitation constituted a violation of the TILA, citing *Pollock v. General Finance Corp.*, 535 F.2d 295, 299 (5th Cir. 1976), *cert. denied*, 434 U.S. 891, 98 S.Ct. 265, 54 L.Ed.2d 176 (1977). Accordingly, the Court rejected the magistrate's Report and Recommendation and awarded each plaintiff the statutory maximum award of $1,000 plus costs and attorney fees. Because we conclude that *Pollock* does not support the district court's decision, we reverse.

### AFTER–ACQUIRED PROPERTY UNDER § 226.8(b)(5)

Under the TILA, if a lender retains any security interest in connection with a consumer loan, the lender must disclose a description of the security interest and "a clear identification of the property to which the security interest relates." 15 U.S.C.A. § 1639(a)(8). With regard to security interests in after-acquired property, Regulation Z, § 226.8(b)(5), requires that

If after-acquired property will be subject to the security interest, or if other future indebtedness is or may be secured by any such property, this fact shall be clearly

set forth in conjunction with the description or identification of the type of security interest held, retained, or acquired. Section 109A–9–204 of the Georgia Code governs whether after-acquired property is subject to a security interest. In pertinent part, it states that "except as provided in subsection (4) a security agreement may provide that collateral, whenever acquired, shall secure all obligations covered by the security agreement." Ga.Code § 109A–9–204(3). Subsection (4), however, states that "no security interest attaches under an after-acquired property clause . . . (b) to consumer goods other than accessions (Section 109A–9–314) when given as additional security unless the debtor acquires rights in them within 10 days after the secured party gives value." Ga.Code § 109A–9–204(4)(b). In *Pollock v. General Finance Corporation,* 535 F.2d 295 (5th Cir. 1976), *supra,* the court held that a lender violates Regulation Z § 226.8(b)(5) by failing to disclose the nature of its security interest retained in after-acquired consumer goods when it omits from its disclosure statement the 10-day limitation provided in Georgia Code § 109A–9–204(4)(b).

The district court cited *Pollock* as authority for Western Pacific's liability in the instant case. We think *Pollock* is clearly distinguishable. In that case the security agreement stated: "[T]here is a Security Agreement on household and consumer goods belonging to Borrowers and located at their address stated above, and on any property listed below." The disclosure statement recited that the security agreement "may cover after-acquired property." *Id.* at 297 and n. 1. The court held that the disclosure statement, although perhaps not false, failed to make a complete disclosure of the security interest retained, not only because it failed to indicate that a security interest *would* be taken, but also because it failed to disclose the 10-day limit on a security interest in after-acquired consumer goods. *Id.* at 298–99. There was no ques-

---

**3.** The district court noted that "for example, an item of jewelry cannot readily be characterized as any of these." R. 153.

tion that the lender retained a security interest in after-acquired consumer goods under the security agreement. The issue was whether that interest had been adequately disclosed. Briefly stated, the distinction is that in *Pollock* the lender had a security interest in consumer goods under the terms of a security agreement while in the instant case under the security deed the lender had none. We are confident in concluding that neither the TILA nor Regulation Z require Western Pacific to disclose a non-existent security interest.

Some courts have held that whether the lender actually retains a security interest is irrelevant. *Franklin v. Community Federal Savings & Loan Association*, 629 F.2d 514, 515–16 (8th Cir. 1980); *Basham v. Finance America Corporation*, 583 F.2d 918, 923–25 (7th Cir. 1978), *cert. denied, DeJaynes v. General Finance Corporation of Illinois*, 439 U.S. 1128, 99 S.Ct. 1046, 59 L.Ed.2d 89; *Ives v. W. T. Grant*, 522 F.2d 749, 761 (2d Cir. 1975). These cases presented roughly similar situations. The lender's security interest disclosure statement contained a broad disclosure of a security interest in after-acquired property with little or no qualification or limitation. The disclosure was challenged under Regulation Z § 226.8(b)(5). To the lender's defense that it did not actually claim such a security interest or that state law limited the security interest actually retained, the court replied that whether a lender actually retains a security interest is irrelevant where the disclosure itself is so misleading that a borrower would be led to believe that such a security interest had been retained.

The superficial similarity between *Pollock v. General Finance Corporation* and these cases is apparent, but we reiterate that in *Pollock* there was never any question that the lender retained a security interest in after-acquired consumer goods. Moreover, the rationale of the *Pollock* court is subtly different. The court held that the lender "failed to disclose the nature of the security interest" retained in after-acquired consumer goods by failing to disclose the 10-day limitation imposed by Georgia law. *Id.*, 535 F.2d at 299. The violation was linked to a failure to adequately identify the type of security interest retained and not to the misleading nature of the disclosure. This circuit has stated that a misleading disclosure is as much a violation as a failure to disclose at all, *Smith v. Chapman*, 614 F.2d 968, 971 (5th Cir. 1980), but we have never held that the two are one and the same thing. We would be reluctant to adopt the position of the Eighth, Seventh, and Second Circuits because it seems contrary to the main thrust of the express provisions of Regulation Z § 226.8(b)(5) and at odds with the Supreme Court's recent warning that

> *Meaningful* disclosure does not mean *more* disclosure. Rather, it describes a balance between "competing considerations of complete disclosure . . . and the need to avoid . . . 'informational overload.' "

*Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22, 33 (1980). In any event, this case does not provide the appropriate vehicle for considering that issue because we conclude, as discussed in the third part of this opinion, that Western Pacific's disclosure statement is not misleading. Accordingly, we turn to an examination of Western Pacific's security interest under the deed.

State law determines whether a lender possesses a substantive interest in property securing performance of an obligation, while Regulation Z merely defines whether this state-created substantive right constitutes a "security interest" for federal disclosure purposes. *Souife v. First National Bank of Commerce*, 628 F.2d 480, 483 (5th Cir. 1980), *Edmondson v. Allen-Russell Ford, Inc.*, 577 F.2d 291 (5th Cir. 1978), *cert. denied*, 441 U.S. 951, 99 S.Ct. 2180, 60 L.Ed.2d 1057 (1979). As previously noted, Georgia Code § 109A–9–204 permits a security interest in after-acquired consumer goods acquired within the 10-day limitation period. The narrow issue here, however, is whether after-acquired consumer goods within the meaning of Section 109A–9–204(4)(b) are contemplated within the scope of the security deed to Western Pacific. To determine the answer we look to the lan-

guage of the deed and interpret it in light of the Uniform Commercial Code as adopted by the Georgia Legislature.

Article 9 of the Uniform Commercial Code applies to security transactions in a broad spectrum of tangible and intangible personal property. Our focus must be upon its applicability to "goods." The Code definition of the term "goods" includes, in pertinent part, "all things which are movable at the time the security interest attaches or which are fixtures (Section 9–313) ...." Ga.Code § 109A–9–105(h). Goods are classified as consumer goods, equipment, farm products, and inventory. Ga.Code § 109A–9–109. Goods are "consumer goods" if they are "used or bought for use primarily for personal, family or household purposes." Ga.Code § 109A–9–109(1).

The only language in the security deed that could conceivably include after-acquired consumer goods is found in the phrase "all plumbing, heating and lighting fixtures, and equipment now or hereafter attached to or used in connection with said premises." The equipment referred to in this phrase is easily eliminated from the sphere of Section 109A–9–204(4)(b) because "equipment" under the Code denotes a separate, mutually exclusive[4] class of goods. Goods are

> "*equipment*" if they are used or bought for use primarily in business (including farming or a profession) or by a doctor who is a non-profit organization or a governmental subdivision or agency or *if the goods are not included in the definitions of inventory, farm products or consumer goods.*

Ga.Code § 109A–9–109(2). (Emphasis added). By definition, then, "equipment" is not "consumer goods", and as security interest in after-acquired equipment is unaffected by the 10-day limitation imposed in Section 109A–9–204(4)(b).

The determination that the security interest in fixtures retained in the security deed is also beyond the scope of Section 109A–9–204(4)(b) requires a more complicated analysis. Under the Code a fixture is not a separate and exclusive classification of goods but rather a unique category of property around which some of the thorniest problems concerning security interests in goods arise. First, we note that Article 9 of the Georgia Code applies "to any transaction (regardless of its form) which is intended to create a security interest in personal property *or fixtures*" except as provided in Section 109A–9–104. Ga.Code § 109A–9–102(1)(a) (Emphasis added). On the other hand, Section 109A–9–104(h) states that Article 9 does not apply to "the creation or transfer of an interest in or lien on real estate" as presently defined under Georgia law "except to the extent that provision is made for fixtures in Section 109A–9–313." The exceptional status accorded fixtures is confirmed in the Code definition of "goods", *supra*, which includes "all things which are movable at the time the security interest attaches *or which are fixtures (109A–9–313)* ...." Ga.Code § 109A–9–105(h). (Emphasis added).[5] We conclude, therefore, that the provisions of Article 9 apply to a transaction creating a security interest in fixtures, but only to the extent that provision is made for fixtures in Section 109A–9–313. Further, considering the Code definition and classification of "goods", it appears that the Code contemplates that consumer goods may also be fixtures at least insofar as fixtures are subject to the Code under Section 109A–9–313.

That conclusion is confirmed by Section 109A–9–313, which provides that "*goods are fixtures* when they become so related to particular real estate that an interest in them arises under real estate law."[6] Ga.

---

**4.** U.C.C. § 9–109, comment 2 (1972 Revisions).

**5.** The drafters of the Uniform Commercial Code emphasized this distinction by noting in the official comments to the definition of "goods" that "for treatment of fixtures, Section 9–313 should be consulted." Comment 3, U.C.C. § 9–105 (1972 Revisions).

**6.** This concept of a fixture is the same as that adhered to in Georgia law generally. Ga.Code § 109A–9–313, Ga. reviser's comment 2. See W. Agnor & G. Kock, 12 Encyclopedia of Georgia Law 478–79 (1967).

Code § 109A–9–313(1)(a). (Emphasis added). If goods may become fixtures, it follows that consumer goods may become fixtures. Indeed, the section makes express reference to consumer goods.[7] It is tempting to proceed from this point to conclude that all fixtures would always be subject to the 10-day limitation provisions of Section 109A–9–204(4)(b) since fixtures (unlike accessions) are not expressly excluded from that section. Such a conclusion, however, would not be totally in keeping with our previous conclusion that provisions of Article 9 are only applicable to fixtures to the limited extent that a security interest in fixtures is provided for in Section 109A–9–313.

Section 109A–9–313 clearly recognizes that fixtures may be subject to two different types of security interest: a chattel interest and a real estate interest. This recognition is in accord with the dual nature of a fixture, a chattel which has become real property. Indeed, the existence of both a chattel interest and a real estate interest in fixtures gives rise to the need for Section 109A–9–313. This section attempts to equitably resolve conflicts between these two interests. Subsequent Sections 109A–9–401 through 9–403 provide for "fixture filing" to enable a secured party with a chattel interest in "goods which are or are to become fixtures" to preserve that interest. In other words, Section 109A–9–313 deals with the priority of a real estate interest vis-a-vis a chattel interest in such fixtures, but it does not apply to the creation of a real estate interest in fixtures. That is matter left to the state's real estate law.[8] It is beyond the extent of the provisions of Section 109A–9–313. Accordingly, we conclude that Section 109A–9–204(4)(b) does not apply to the creation of a real estate security interest in after-acquired fixtures, even though those fixtures might otherwise be encompassed in the Code definition of "consumer goods" on the basis of their physical and utilitarian characteristics.

7. Ga.Code § 109A–9–313(4)(c).

8. Ga.Code § 109A–9–313(3) provides: "This Article does not prevent creation of an encum-

A real estate interest in fixtures arises pursuant to real estate law and is contingent upon the item of property attaining the legal status of "fixture", as defined by that law. Western Pacific's security interest in "fixtures and equipment now or hereafter attached to or used in connection with said premises" is precisely this type of interest and, therefore, is not subject to the 10-day limitation of Section 109A–9–204(4)(b). *Accord, Smathers v. Fulton Federal Savings and Loan Association*, No. C79–1511A (N.D.Ga. April 21, 1980) (adopting magistrate's report and recommendation of March 31, 1980). *See also Franklin v. Community Federal Savings & Loan Association*, 478 F.Supp. 22 (E.D.Mo.1979) (with reference to Missouri law), *reversed on other grounds*, 629 F.2d 514 (8th Cir. 1980).

### *CONFUSING OR MISLEADING DISCLOSURE UNDER § 226.8(b)(5) AND § 226.6(c)*

The Williams argue, in the alternative, that even if Western Pacific has no security interest in after-acquired consumer goods under the security deed, the security interest disclosure nevertheless violates the TILA and Regulation Z because it is misleading or confusing. In the context of the instant case, a misleading or confusing disclosure of a security interest in after-acquired property may constitute a violation of Section 226.8(b)(5) or Section 226.6(c) of Regulation Z. Although the issues framed by the litigants refer only to Section 226.-6(c), we are obliged to consider the applicability of both sections in light of our conclusion in the preceding part of this opinion. We conclude that Western Pacific's disclosure violates neither section.

The disclosures at issue are confined to two sentences in the previously-quoted security interest disclosure. For convenience of reference, again, they are:

brance upon fixtures pursuant to real estate law."

The trust deed/mortgage also covers *after-acquired property located on* or attached to the described real property. A security agreement will not be taken on *furniture*, fixtures, and equipment situated therein. (Emphasis added).

The Williams contend that the first sentence misleads the borrower into believing that Western Pacific retains a security interest in after-acquired consumer goods *located on* the property, even though the security deed refers only to fixtures and equipment. This contention can be characterized as either a contention that Western Pacific's disclosure of a security interest in after-acquired property is overly broad in a manner which misleads or confuses the borrower or a contention that the disclosure claims a non-existent security interest in after-acquired consumer goods. The overbroad contention is subject to the requirements of clarity applicable to Section 226.-8(b)(5) while the latter contention is, in effect, an argument that the sentence constitutes confusing or misleading additional information in violation of Section 226.6(c).

Both sides argue that the second sentence purports to exclude furniture, fixtures, and equipment from the security interest in after-acquired property. The Williams urge, however, that even if the second sentence effectively nullifies the security interest in fixtures and equipment, the word "furniture" constitutes additional information under Section 226.6(c) that is confusing or misleading to the borrower because "furniture" is neither a fixture nor attached equipment and because "furniture" is classifiable as "consumer goods."

The purpose of the TILA is to "assure a meaningful disclosure of credit terms," 15 U.S.C.A. § 1601, and Regulation Z § 226.-6(a), states the general disclosure requirement that disclosures shall be made clearly, conspicuously and in meaningful sequence. *Smith v. Chapman*, 614 F.2d 968 (5th Cir. 1980). Further, Section 226.8(b)(5) requires that the fact that after-acquired property will be subject to a security interest must be "clearly set forth in conjunction with the description or identification of the type of security interest held, retained, or acquired." Moreover, as we have previously noted, a misleading disclosure is as much a violation as a failure to disclose at all. *Id.* at 977.

We conclude that the disclosure at issue is not overbroad in a manner that would violate the requirements for clarity in Section 226.8(b)(5). With reference to the recitations of the security deed, the first sentence clearly identifies Western Pacific's security interest in after-acquired "buildings and improvements" *on the property* and "plumbing, heating and lighting fixtures and equipment . . . *attached to* or used in connection" with the premises. Considered alone, the sentence, like most attempts at written communication, can be read more broadly. It is subject to a broader interpretation here only if one disregards the nature of the transaction and the instrument which the disclosure purports to explain. We think the determination whether a disclosure is misleading or confusing may not be made in such a vacuum.

Certainly, the adequacy of a disclosure must be assessed, at least in part, by the audience for which disclosure was intended. *Edmondson v. Allen-Russell Ford, Inc.*, 577 F.2d 291, 296 (5th Cir. 1978). In making such assessments, however, we must avoid reaching beyond the purpose of the TILA in search of a violation. We reiterate that "*meaningful* disclosure does not mean *more* disclosure." *Ford Motor Credit Co. v. Milhollin, supra.* Broad disclosures claiming an unqualified security interest in after-acquired property have been held to mislead in violation of Section 226.8(b)(5). *See, e. g., Franklin v. Community Federal Savings & Loan Association*, 629 F.2d 514 (8th Cir. 1980); *Basham v. Finance America Corporation*, 583 F.2d 918 (7th Cir. 1978), *cert. denied, DeJaynes v. General Finance Corporation of Illinois*, 439 U.S. 1128, 99 S.Ct. 1046, 59 L.Ed.2d 89. We are not persuaded that the instant disclosure should be included in that category. We conclude that it clearly identifies the type of security interest retained, as required by Section 226.-8(b)(5). Implicit in that determination is the conclusion that the first sentence does not constitute "additional information" and,

accordingly, need not be examined with respect to Section 226.6(c). We turn now to the second sentence.

Section 226.6(c) of Regulation Z provides in pertinent part:

At the creditor's option, additional information or explanations may be supplied with any disclosure required by this part, but none shall be stated, utilized, or placed so as to mislead or confuse the customer or lessee or contradict, obscure, or detract attention from the information required by this part to be disclosed.

A disclosure statement which claims a nonexistent security interest may violate this section. *Ives v. W. T. Grant*, 522 F.2d 749, 761 n. 29 (2d Cir. 1975). *See Houston v. Atlanta Federal Savings & Loan Association*, 414 F.Supp. 851 (N.D.Ga.1976).

With regard to the second sentence we agree that the word "furniture" is indeed superfluous in light of our conclusion that Western Pacific neither claimed nor retained any security interest in after-acquired consumer goods. A disclosure excluding fixtures and equipment alone would have been adequate to nullify the security interest in those categories of property. In addition, we also criticize the clarity of the sentence because the term "security agreement" is used. "Security interest" is more befitting the meaning and purpose that has been urged by both parties for this sentence, though we think this ambiguity is substantially alleviated when the sentence is considered in context. Although we agree that the sentence has these defects, we do not agree that they are "stated, utilized, or placed so as to mislead or confuse the customer."

■ An objective standard is used in determining TILA violations. *Smith v. Chapman*, 614 F.2d 968, 971 (5th Cir. 1980). With regard to the technical requirements of the Act and Regulation Z, we demand strict compliance in order to promote meaningful disclosure so that the borrower can more readily compare the credit terms and the cost of credit offered by various lenders. *Id.* In determining whether a particular disclosure is clear or confusing, however, we must be guided by probabilities rather than mere possibilities. "The question is not whether something is capable of semantic improvement but whether it contains a substantial and accurate disclosure . . . ." *Id., quoting Dixon v. D. H. Holmes Company, Ltd.*, 566 F.2d 571 (5th Cir. 1978). The inclusion of the word "furniture" in Western Pacific's disclosure would confuse and perhaps mislead a lawyer, but we believe the issue is whether it would confuse or mislead a borrower. We are not persuaded that a borrower would read the exclusion of "furniture" to imply the inclusion of similar goods in Western Pacific's security interest. Accordingly, we find no violation of Section 226.6(c).

Finding that Western Pacific's disclosure of a security interest in after-acquired property meets the requirements of the TILA and Sections 226.8(b)(5) and 226.2(c) of Regulation Z, we REVERSE the summary judgment awarding the Williams recovery for a TILA violation and VACATE the award to them of attorney fees and costs based upon that violation. Because the district court did not reach other claimed violations of the TILA,[9] we REMAND for further proceedings.

REVERSED AND REMANDED.