**In re Lorraine JOHNSON-ALLEN, Debtor.**

**Lorraine JOHNSON-ALLEN, Plaintiff,**

**v.**

**LOMAS AND NETTLETON COMPANY, Defendant.**

**Bankruptcy No. 86–01239K.
Adv. No. 86–0781K.**

United States Bankruptcy Court, E.D. Pennsylvania.

Dec. 18, 1986.

Gary Klein, Philadelphia, Pa., for debtor/plaintiff.

David B. Comroe, Philadelphia, Pa., for defendant.

James J. O'Connell, Philadelphia, Pa., Chapter 13 standing trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The instant adversarial proceeding was initiated by the Debtor-mortgagor against the holder of the first mortgage on her residential real estate to reduce the amount of the mortgagee's secured claim, based upon alleged violations of the federal Truth-in-Lending Act and Regulations in the mortgage transaction documents and a contention that the attorney's fees sought by the Mortgagee in its claim were excessive. We find that we are guided in attaining the outcome of this matter by several convincing precedents of this Court in decisions by our senior brother, Chief Judge Emil F. Goldhaber. Following these decisions, with which we are in almost total agreement, we shall rule in favor of the Debtor on several of her contentions and reduce the Mortgagee's claim.

This bankruptcy case was filed by the Debtor on March 14, 1986. On May 8, 1986, the Mortgagee filed a Proof of Claim, seeking arrearages of $2,251.36, consisting of twenty (20) months of delinquent mortgage payments and late charges; attorney's fees of $875.00; and costs of $283.50.

The instant proceeding was filed on July 25, 1986, and contained four (4) "claims" or counts.

The first objected to a statement in the Proof of Claim that the Mortgagee had taken a pre-petition judgment against the Debtor. The Mortgagee subsequently has conceded that the statement that a judgment had been entered was in error and, although the Debtor originally pressed for damages on this basis under Bankruptcy Rule 9011 and Federal Rule of Civil Procedure 11 on this Count, the Debtor has apparently accepted the Court's preliminary ruling at trial that this count was not worth pursuing.

The second Count related to the alleged violations of the federal Truth-in-Lending Act, 15 U.S.C. § 1601, et seq., (hereinafter "TILA") and its Regulations, at 12 C.F.R. § 226.1, et seq. Because the operative documents in the mortgage transaction in is-

sue were executed on December 9, 1970, the TILA and Regulations, as they existed on that date, control, rather than the present version of the TILA. *See* P.L. No. 96–221, § 625 (1980), *as amended,* P.L. No. 97–25, § 301 (1981).

The resolution of this issue, as is indicated below, is eased considerably by several precedents authored by Chief Judge Emil F. Goldhaber. For the most part, the Debtor's claims arose from disclosure statements and mortgage documents which were almost identical to those considered by Judge Goldhaber. However, one rather unique additional issue, described in the next paragraph, also surfaced.

At the time of the trial, conducted on September 30, 1986, neither party had a copy of a TILA disclosure statement. The Debtor testified, with less than absolute certainty, that she did not think that she ever received a disclosure statement, but that, since the transaction occurred almost sixteen (16) years ago and she had lost her original papers, it was possible that she had. Several days after the trial, during the course of which it had contended that it had "purged" the disclosure statement from the file, the Mortgagee advised that it had found the disclosure statement after all. Both parties argue, in the alternative to analyzing the form finally located, that the non-appearance of the disclosure statement until after the hearing strengthens their respective position. Specifically, the Debtor contends that there is no evidence that she did receive a disclosure statement on the record, and the Mortgagee contends (incorrectly we believe) that the Debtor's alleged insistence that she received no disclosure statement undermines the Debtor's credibility. However, we believe that the Debtor did receive the disclosure statement ultimately found, and that she was candid in relating her lack of certainty as to whether she received it at trial. We shall therefore decide this case on the basis of a finding that the Debtor did receive the document attached as Appendix "A" to the Debtor's Brief and Exhibit "B" to the Mortgagee's Brief, and determine whether this document provided the requisite disclosures. Both parties, in anticipation of this ruling, have proceeded to argue from this position, at least alternatively, in their respective Briefs.[1]

The third count invokes the so-called Pennsylvania Usury Law, 41 P.S. § 406, to challenge the Mortgagee's costs and attorney's fees, totalling $1,158.50. Although the Mortgagee claimed that the Debtor, by her Counsel, had agreed that an Attorney's fee in the sum of $500.00, as opposed to the $875.00 figure originally requested for such fees, would be allowed, we find that there were only unconsummated negotiations concerning this item.

Finally, in the fourth count, the Debtor sought permission to pay the entire secured claim of the Mortgagee, as opposed to only the arrearages, through her Plan. As we indicate hereinafter, the Debtor has a right do so, but either the Mortgagee, the Trustee, or the Debtor herself must file a Proof of Claim seeking to so treat the Mortgagee's Claim, and we therefore shall merely indicate same in our Order.

At the trial on September 30, 1986, the Debtor testified first, principally on the issue of whether she received a TILA disclosure statement or not. The Mortgagee's Counsel, David B. Comroe, Esquire, then took the stand to testify on the issue of the Mortgagee's requests for attorney's fees and costs. At the close of the testimony, the Court entered an Order of October 1, 1986, requiring the parties to file Briefs in support of their respective positions on or before October 24, 1986, and November 17, 1986, respectively. Although the parties agreed that no transcript of the testimony would be necessary, the Mortgagee in fact apparently did have the transcript pre-

---

1. Because we decide the TILA issue and, ultimately, the attorney's fee issue as matters of law applied to the documents before us, rather than on the basis of factual findings, we are not preparing this Opinion in the format containing separate designations of Findings of Fact, Conclusions of Law, and Discussion that we would utilize to comply with Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52, when factual findings are significant to the outcome.

pared, as it is attached as Exhibit "A" to its Brief.

The Debtor alleged three (3) separate violations of the TILA in the disclosure statement. We are prepared to find a violation of the TILA on the basis of the first of these alleged violations—the failure of the disclosure statement to adequately describe the scope of the security interests taken in the mortgage—largely on the basis of Judge Goldhaber's precedents. Since the TILA has always been interpreted as providing the same statutory damages whether there was but one or multiple violations of the TILA in a separate transaction, even prior to the enactment of 15 U.S.C. § 1640(g), which specifically so provided in 1974, *see Mirabal v. General Motors Acceptance Corp.*, 537 F.2d 871, 880 & n. 17 (7th Cir.1976), it is not necessary to determine whether the other two (2) alleged violations have any merit.[2]

The former provision of the TILA relative to disclosure of security interests taken in sale transactions, found in 15 U.S.C. § 1638(a)(10), is as follows:

(a) In connection with each consumer credit sale not under an open end credit plan, the creditor shall disclose each of the following items which is applicable: . . .

. . . . .

(10) A description of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates.

The pertinent provision of the Regulations, former 12 C.F.R. § 226.8(b)(5), read as follows:

*(b) Disclosures in sale and nonsale credit.* In any transaction subject to this section, the following items, as applicable, shall be disclosed: . . .

. . . . .

(5) A description or identification of the type of any security interest held or to be retained or acquired by the creditors in connection with the extension of credit, and a clear identification of the property to which the security interest relates or, if such property is not identifiable, an explanation of the manner in which the creditor retains or may acquire a security interest in such property which the creditor is unable to identify. In any such case where a clear identification of such property cannot properly be made on the disclosure statement due to the length of such identification, the note, other instrument evidencing the obligation, or separate disclosure statement shall contain reference to a separate pledge agreement, or a financing statement, mortgage, deed of trust, or similar document evidencing the security interest, a copy of which shall be furnished to the customer by the creditor as promptly as practicable. If after-acquired property will be subject to the security interest, or if other or future indebtedness is or may be secured by any such property, this fact shall be clearly set forth in conjunction with the description or identification of the type of security interest held, retained or acquired.

The mortgage in issue recites that the security interest taken by the Mortgagee's assignor is as follows:

THIS MORTGAGE is intended to be a purchase money Mortgage under the provisions of the Lien Priority Law as amended.

TOGETHER with all and singular the Buildings and Improvements of said premises, as well as all alterations, addi-

---

**2.** These alleged violations were that the terms "finance charge" and "annual percentage rate" were not printed more conspicuously than the other terms, as required by former 12 C.F.R. § 226.6(a), and that the disclosure statement did not correctly identify the amount of the month- ly payments, since it only disclosed the principal and interest payments, in purported violation of former 15 U.S.C. § 1638(a)(8), and 12 C.F.R. § 226.8(b)(3). We offer no opinion as to whether either of these alleged violations have merit.

tions or improvements now or hereafter made to said premises, and any and all appliances, machinery, furniture and equipment (whether fixtures or not) of any nature whatsoever now or hereafter installed in or upon said premises, Streets, Alleys, Passages, Ways, Waters, Water Courses, Rights, Liberties, Privileges, Hereditaments and Appurtenances whatsoever thereunto belonging, or in any wise appertaining, and the Reversions and Remainders, Rents, Issues and Profits thereof: ...

The description of the security interest taken in the disclosure statement is as follows:

9 COLLATERAL

(a) The loan will be secured by a mortgage or deed of trust on real property located at

6030 Osage Avenue
Philadelphia, Penna.

If the above is not a clear identification of the property, a copy of the mortgage or deed containing a complete description will be delivered to the Borrower at the closing.

(b) The loan will also be secured by a warrant of attorney authorizing the entry of judgment which when entered will constitute a lien on all of your real property in the county in which such judgment is entered and upon execution and levy a lien on your personal property

(c) The above mortgage or deed may secure future advances and after-acquired property may be subject to the above liens.

As we indicated at the outset, a series of decisions by Judge Goldhaber lead the way to the result in this case. "As a matter of comity and professional courtesy, brother judges in the same district are accustomed to following each other's decisions." *In re Brents-Pickell*, 12 B.R. 352, 357 (Bankr.S.D.Cal.1981). *See also, e.g., Buna v. Pacific Far East Line, Inc.*, 441 F.Supp. 1360, 1365 (N.D.Cal.1977); and *Eaton Land & Cattle Co. v. Rocky Mountain Investments*, 28 B.R. 890, 892 (Bankr.D.Colo.

1983). We have no hesitancy in doing so here, because we believe these decisions to be, for the most part, totally correct, and uncontested by contrary precedent elsewhere.

In *In re Hanna*, 31 B.R. 424 (Bankr.E.D. Pa.1983), Judge Goldhaber established that an objection to a proof of claim based on a TILA violation was in the nature of a claim for recoupment, and was hence not barred by the one-year statute of limitations set forth in 15 U.S.C. § 1640(e). Consistent with the teaching of the decisions of the United States Supreme Court in *Mourning v. Family Publications Service*, 411 U.S. 356, 376, 93 S.Ct. 1652, 1664, 36 L.Ed.2d 318 (1973), that the penalty for violations is a "minimum sanction" to the end of providing meaningful disclosure of credit terms to consumers, *id.* at 363, 93 S.Ct. at 1657, and by our local Court of Appeals that "[e]nforcement ... achieved in part by a system of strict liability in favor of consumers who have secured financing when this standard is not met," *Thomka v. A.Z. Chevrolet, Inc.*, 619 F.2d 246, 250 (3d Cir. 1980), even if the creditor misconduct is minimal, *Gennuso v. Commercial Bank & Trust Co.*, 566 F.2d 437, 440–41 (3d Cir. 1977), and the borrower is not actually damaged thereby, *Dzadovsky v. Lyons Ford Sales, Inc.*, 593 F.2d 538, 539 (3d Cir.1979), Judge Goldhaber has frequently found TILA violations in mortgage-transaction disclosure statements. *See In re Cervantes*, 67 B.R. 816 (Bankr.E.D.Pa., 1986); *In re Perry*, 59 B.R. 947 (Bankr.E.D. Pa.1986); *In re Schultz*, 58 B.R. 945 (Bankr.E.D.Pa.1986); and *In re Cosby*, 33 B.R. 949 (Bankr.E.D.Pa.1983). *Cf. In re Werts*, 48 B.R. 980 (E.D.Pa.1985) (Judge Goldhaber reversed in case where he failed to find a TILA violation).

The similarities between the mortgage and disclosure statement here and in *Cervantes*, in particular, are striking. *See also Perry*, 59 B.R. at 948. This similarity is perhaps explained by the statement in the Mortgagee's Brief that the document forms utilized in this case are a "standard

FHA mortgage and the accompanying disclosure statement...." Defendant's Memorandum of Law, at 7. However, in light of the *Cervantes* and *Perry* decisions, the latter of which the Mortgagee ironically cites later in its Brief for a different principle, we are compelled to reject the Mortgagee's statement in its Brief that "no precedent exists for [the Debtor's] outrageous position" that a large number of similar forms contain similar violations and that a large number of mortgagors could successfully assert similar recoupment objections to claims in bankruptcy proceedings. This conclusion, we submit, is no more "outrageous" than the observation that the federal Government apparently promulgated standardized forms which subjected numerous borrowers to standing violations of the TILA.

The Debtor's position here is almost identical to that of the Debtor in *Cervantes* and is, if anything, stronger than that of her counterpart in *Perry*. The language of both the mortgage and the disclosure statement at issue in *Cervantes* appears to be verbatum to that in issue here. *See* at 818–19. In *Perry*, the very similar disclosure statement was positive in stating that it covered "after-acquired property," when in fact the mortgage covered only the realty and future fixtures and improvements. Nevertheless, quoting *Bizier v. Globe Financial Services, Inc.*, 654 F.2d 1, 3 (1st Cir.1981), which pointed out that an inaccurate, over-inclusive "disclosure" of a security interest was violative of the TILA, this Court in *Perry* had no difficulty in finding a TILA violation. *Accord, e.g.: Basham v. Finance America Corp.*, 583 F.2d 918, 923–26 (7th Cir.1978); *Reid v. Liberty Consumer Discount Co.*, 484 F.Supp. 435, 440–41 (E.D.Pa.1980) (per BRODERICK, J.); and *Cadmus v. Commercial Credit Plan, Inc.*, 437 F.Supp. 1018, 1019–21 (D.Del. 1977) (per STAPLETON, J.). In the latter three (3) cases, one authored by Third Circuit Court of Appeals Judge Walter K. Stapleton and one arising in our own district court, the courts held that over-inclusive disclosure statements, which failed to note the ten-day limitation on security interest in after-acquired consumer goods imposed by Article 9–204 of the Uniform Commercial Code (UCC), were violative of the TILA. We might add that the disclosure statement here contains a similar disclosure violation as well.

We note that the Mortgagee cites to a single authority, *Williams v. Western Pacific Financial Corp.*, 643 F.2d 331 (5th Cir.1981), in reply to the several authorities of the Debtor and the past rulings of this court on this point. In that case, however, the mortgagee took a security interest in only after-acquired fixtures and equipment, not on "consumer goods" such as appliances and furniture, as here, and the disclosure statement there stated that, while security was taken on certain after-acquired property, it was not taken on "furniture, fixtures, and equipment."

■ To the extent that *Williams* is in conflict with *Basham, Reid,* and *Cadmus,* we are inclined to follow the latter three (3) decisions, particularly when it is considered that we should make every effort to follow the decisions of the district court where we are sitting. *See In re Moisson,* 51 B.R. 227, 229 (Bankr.E.D.Mich.1985); *In re Investment Sales Diversified, Inc.*, 49 B.R. 837, 846 (Bankr.D.Minn.1985); and *In re V–M Corp.*, 23 B.R. 952, 954–55 (Bankr.W. D.Mich.1982). Further, the *Williams* court distinguishes its previous decision in *Pollock v. General Finance Corp.*, 535 F.2d 295 (5th Cir.1976), *cert. denied,* 434 U.S. 891, 98 S.Ct. 265, 54 L.Ed.2d 176 (1977), consistent with *Basham, Reid,* and *Cadmus,* by holding that the disclosure statement in *Pollock* stated only that the security agreement "may" cover after-acquired property, while that in *Williams* was more definite. Here, as in *Pollock,* the disclosure statement "failed to indicate that a security interest *would* be taken," as well as failing to disclose the UCC ten-day limit on taking security interests on consumer goods. 643 F.2d at 334. Therefore, *Williams* is distinguishable and is a very weak and isolated authority for a contrary result.

■ Here, the mortgage effects a security interest in virtually all of the Debtor's household goods as well as the realty purchased. The disclosure statement, meanwhile, never mentions a word about the taking of a security interest in any of the Debtor's personal property. Instead, the disclosure statement indicates only that the realty is taken as security and that it "may" cover future advances, as well as that after-acquired property "may" be covered. Ironically, the mortgage makes no mention of covering any future advances and, while "appliances, machinery, furniture and equipment ... *hereafter* installed" might arguably be a loose equivalent of "after-acquired property," the mortgage purports to secure such items which are "now ... in or upon said premises," as well as that which is "hereafter installed." The disclosure statement here is, thus, in one sense under-inclusive and in another over-inclusive. In sum, the disclosures simply fail to jive at all with the security actually taken in the mortgage, which is of course the crucial consideration. It is hence difficult to conceive of a more apparent violation of former 15 U.S.C. § 1638(a)(10) and 12 C.F.R. § 226.8(b)(5) than exists in the disclosure forms given to the Debtor in this case.

There is, therefore, no question that the Debtor is entitled to a $1,000.00 recoupment penalty against the Mortgagee. The Debtor further claims, however, that, since Eugene Allen, identified therein as the Debtor's husband, was also a borrower in the mortgage transaction, the Debtor should be entitled to two (2) recoveries.

■ As the parties indicate, the Circuits are split on the issue of whether multiple borrowers can obtain multiple recoveries of statutory damages for violations of the TILA. The operative language of 15 U.S.C. § 1640(a), stating that a creditor who is liable "to any person is liable to such person" in the statutory amount, is subject to different interpretation. *Compare Brown v. Marquette Savings & Loan Association,* 686 F.2d 608, 614–15 (7th Cir. 1982); *Powers v. Sims & Levin,* 542 F.2d 1216, 1218, 1222 (4th Cir.1976); and *Hinkle v. Rock Springs National Bank,* 538 F.2d 295, 297 (10th Cir.1976) (only single recovery permitted for multiple borrowers); *with White v. World Finance,* 653 F.2d 147, 152 (5th Cir.1981); and *Andersen v. Farmers Bank,* 640 F.2d 1347, 1349 (8th Cir.1981) (double recovery permitted for multiple borrowers). The crucial matter of the law controlling upon us is left somewhat open by the absence of a decision of the Third Circuit Court of Appeals addressing the issue. However, we are aware of two (2) decisions by different judges in this district which have held that a multiple recovery is permissible, and we believe that we should follow the decisions of our district court, which reviews our decisions, whenever possible. *See* cases cited at pages 973 *supra.* Those cases are *Lee v. Fidelity Consumer Discount Co.,* C.A. No. 79–2160, Slip Opinion at 18 (E.D.Pa., Opinion filed June 15, 1981) (per DITTER, J.); and *Griggs v. Provident Consumer Discount Co.,* 503 F.Supp. 246, 251 (E.D.Pa. 1980), *appeal dismissed after remand,* 699 F.2d 642 (3d Cir.1983) (per LORD, CH. J.). *Cf. Cadmus v. Commercial Credit Plan, Inc.,* 437 F.Supp. 1018, 1021–22 (D.Del. 1977) (per Circuit Judge Walter K. Stapleton, when he was sitting as a district judge in the state of Delaware).

It therefore appears quite clear that, if multiple borrowers had instituted this action, we would be obliged to allow them multiple recoveries. There is a logic to this result as well. No known decision has limited a single party plaintiff in a TILA case arising out of an action involving multiple borrowers to a recovery which is divided by the number of borrowers. Therefore, it would seem that the *Brown* and *Sims* decisions could be circumvented by the borrowers' filing of serial TILA actions by each of them separately. This being so, it is submitted that it is eminently logical to allow multiple borrowers to each obtain a recovery of statutory damages in a single action.

■ Unfortunately for the Debtor, this result, and, more importantly, the fore-

going reasoning which supports it, do not support a double recovery for the Debtor here. The language of § 1640(a) allows, in the words of Judge Stapleton, that "each one should be able to collect the penalty," 437 F.Supp. at 1022, not that one should be able to collect for both. In the event that Eugene Allen ever sought to utilize the TILA to recoup claims against him, in any sort of subsequent proceeding, he would find that the Debtor had already "used" his recovery as well as her own. We find nothing in the TILA that would allow the Debtor or Mr. Allen or any borrower to multiply his or her statutory damages simply because there are a number of co-borrowers in the transaction. Therefore, since it is only the Debtor who is a party here, we cannot see how she can logically be awarded more than one statutory penalty. The Debtor is therefore limited to one $1,000.00 recoupment penalty against the Mortgagee's claim.

The issue of the attorney's fees and costs to which the Mortgagee is entitled raises a provocative issue about the interplay of federal bankruptcy law, applicable state law, and the terms of a contract between the parties allowing the creditor to recover such sums in the event of default. The pertinent bankruptcy Code provision is 11 U.S.C. § 506(b), which provides as follows:

> (b) To the extent that an allowed claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, *and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.* (emphasis added).

■ The difficulty arises from the reference in this provision to charges "provided for under the agreement." This language might be read as requiring the courts to award a creditor whatever fees were specified in the contract between the creditor and the debtor, irrespective of whether the amount provided was in fact reasonable compensation for the services performed. However, this reading has been rejected, and the courts have consistently held, and we think undoubtedly correctly, that the measure of attorney's fees allowed under 506(b) must be limited to the actual value of the services provided. *See, e.g., In re Hudson Shipbuilders, Inc.,* 794 F.2d 1051, 1056–58 (5th Cir.1986); *In re 268 Limited,* 789 F.2d 674, 675–77 (9th Cir.1986) and *In re Spohn,* 61 B.R. 264, 267–68 (Bankr.W.D. Wis.1986).

The further issues presented in applying 506(b) here are, however, the following: (1) May provisions of relevant state law, particularly 41 P.S. § 406, cited by the Debtor here, be considered? and (2) Does the parties' agreement *limit* the creditor in seeking attorney's fees, or may the agreement terms just *be limited* if they are found to be unreasonable, as in the foregoing cases?

■ The answer to the first question, in this context, appears to be in the negative.[3] *See Unsecured Creditors' Committee v. Walter E. Heller & Co. Southeast, Inc.,* 768 F.2d 580 (4th Cir.1985). Therefore, contrary to the Debtor's suggestion, 41 P.S. § 406 has no place in the resolution of the attorney's fees and costs collectible by the mortgagee here.

■ However, the issue of whether the agreement may limit the Mortgagee's recovery of attorney's fees is one that, again, Judge Goldhaber has frequently addressed, in *Cervantes, Perry, Schultz,* and *Cosby, supra,* and we are again prepared to follow his lead, with some qualification. We should add, moreover, that the conclusion

---

3. We qualify this statement because we wish to highlight a distinction between the facts here and in *In re Small,* 65 B.R. 686 (Bankr.E.D.Pa. 1986), where we held that State law, 41 P.S. § 404, was relevant in barring a mortgagee's claim for recovery of interest on arrearages. In that case, we held that 11 U.S.C. § 506(b) did not apply, because its reference point is to a "secured claim," which is distinct from "arrearages" on the claim, upon which the mortgagee there attempted to calculate its interest. Here, unlike there, the attorney's fees attach to the mortgagee's *claim.* Also, here, unlike there, the agreement clearly provides for the fees and costs sought by the creditor.

that, under the terms of 506(b), the creditor is limited by the terms of the agreement, is a holding uniformly followed elsewhere. *See, e.g., In re Lane Poultry of Carolina, Inc.*, 63 B.R. 745, 750 (Bankr.M.D.N.C. 1986); *In re Nicfur-Cruz Realty Corp.*, 50 B.R. 162, 167 (Bankr.S.D.N.Y.1985); and *In re Tolan*, 41 B.R. 751, 753 (Bankr.M.D. Tenn.1984). We should point out that, since the agreement is the only source upon which the Mortgagee can successfully assert a claim for attorney's fees and costs, it is almost inconceivable that the Mortgagee could disregard any limitations included in the agreement in making use of its provisions.[4]

We do believe that Judge Goldhaber has, in his later decisions, refined some of his holdings in his initial decision in this area in *Cosby*. However, we agree totally with the following conclusion set forth in *Cosby*, which is carried over into the later cases:

the mortgagee's right to collect attorney's fees from the debtors is governed by the terms of the mortgage agreement in question which *imposes a cap on the amount of such fees collectible by the mortgagee*. 33 B.R. at 950. (emphasis added).

■ The areas of refinement touched upon in the later cases were (1) the statutory basis for the *Cosby* holding; and (2) the figure upon which the five (5%) percent agreement—percentage is calculated. On the first issue, in *Cosby*, Judge Goldhaber somewhat inexplicably rejects reliance upon 506(b) and holds, instead, that 11 U.S.C. § 1322(b)(2) of the Code is controlling. With all due respect, we are unable to follow the reasoning of Judge Goldhaber

on this point. We do not find anything in 11 U.S.C. § 1322(b)(2) which addresses the subject of attorney's fees recoverable on a secured claim at all. We note that, in *Cervantes*, at 821, Judge Goldhaber does rely on § 506(b) as his source for analysis on the issue of permissible attorney's fees in the mortgage context. Further, the provision in the mortgage which extend the security interests to a certain personalty of the Debtor here causes the claim in the instant case to *not* be a "claim secured only by a security interest in real property that is the debtor's principal residence," and hence places it outside the scope of 11 U.S.C. § 1322(b)(2).

■ In *Cervantes, Schultz*, and *Perry*, Judge Goldhaber further addresses the subject of upon what figure the five (5%) percent is taken. As the Mortgagee here accurately points out, in *Perry*, Judge Goldhaber measured the fees due by taking five (5%) percent of the "total outstanding debt," including accrued interest, late charges, and, apparently, fees and costs, because the mortgage document there did not specify that the five (5%) percent was to be taken of merely the "principal balance."[5] However, the instant mortgage document *does* specify that the fees are to be measured by five (5%) percent "of said principal debt or sum." In *Schultz*, faced with the same language, Judge Goldhaber limited the mortgagee's attorney's fees "to 5% of the principal debt." 58 B.R. at 949. We shall do likewise here, and limit the attorney's fees of the Mortgagee to five (5%) percent of the undisputed principal debt disclosed in the complaint of $4,612.21, or a net sum of $230.61.[6] In so doing,

4. We also follow the holding of the court in *In re Roberts*, 20 B.R. 914, 920–22 (Bankr.E.D.N.Y. 1982), that any post-petition attorney's fees are not warranted because the mortgage document in issue here limits fees to those incurred in "a judgment obtained upon said note ... or other foreclosure proceedings instituted upon this mortgage." Post-petition efforts to assert a claim do not appear to fit into the categories of such proceedings. *See also Cervantes*, at 821.

5. We do not believe that, in so doing, Judge Goldhaber was consistent with his later holding in *Cervantes*, at 821, and his earlier holding in

*Schultz*, 58 B.R. at 949, that such contractual provisions should be construed strictly against the mortgagee, who drafted it. *See also Roberts*, page 976 n. 4 *supra*. Hence, we believe that, in *Perry*, the five (5%) percent should probably have been measured from the principal balance.

6. Moreover, this sum does not seem to us to be unreasonably small. The foreclosure complaint was prepared, for the most part, by Mr. Comroe's having his paralegal fill in the blanks on a computerized form. The foreclosure action was served upon the Debtor just twenty (20) days before the bankruptcy was filed and, although

however, we are not inclined to limit the Mortgagee's undisputed costs of $283.50, although we believe these to be rather liberal under the circumstances.

■ The final point remaining is the Debtor's request that this Court "set the secured claim of the defendant at the entire amount of defendant's claim after adjusting the claim to set off Truth-in-Lending damages and to reduce the attorney's fee." This, we do not believe that we can do. The Mortgagee has filed a Proof of Claim for only the arrearages due. The Mortgagee, the Debtor, or the Trustee, see Bankruptcy Rules 3003(c)(1) and 3004, could file a Proof of Claim for the Mortgagee and are all hereby accorded the right to file such a Proof of Claim consistent with this Opinion. However, the court is not empowered to, in effect, file a Proof of Claim on its own.

An Order consistent with the conclusions set forth herein is attached.

### ORDER

AND NOW, this 18th day of December, 1986, upon trial of the above-entitled matter and consideration of the Briefs of the parties, consistent with the foregoing Opinion, it is hereby ORDERED AND DECREED as follows:

1. Any Proof of Claim filed on behalf of the Mortgagee, LOMAS AND NETTLETON COMPANY, in this action is hereby reduced by $1,000.00, constituting a meritorious recoupment claim of the Debtor against the Mortgagee for violations of the federal Truth-in-Lending Act and Regulations in the disclosure statement given to the Debtor in the mortgage transaction.

2. Any Proof of Claim filed on behalf of the Mortgagee in this action may demand attorney's fees of no more than $230.61 and costs of no more than $283.50.

3. The Mortgagee, the Debtor, and the Trustee are accorded a period of thirty (30) days from the date of this Order to file an Amended Proof of Claim on behalf of the Mortgagee consistent herewith.

4. The Debtor's Counsel is accorded an opportunity to file a Motion requesting attorney's fees and costs, per 15 U.S.C. § 1640(a)(3), within twenty (20) days hereafter, said Motion to be procedurally in conformity with *In re Meade Land and Development Co., Inc.*, 527 F.2d 280 (3d Cir.1975).

---

the Debtor initially filed Preliminary Objections thereto, it is apparent that the bankruptcy filing two (2) days later cut short the need to respond to these. We are not inclined to award any fees for post-petition services, as the mortgage document does not appear to us to allow same. *See Roberts, supra,* page 976 n. 4.